In re Sandra **CERRATO** f/k/a Sandra Mandell, Debtor.

Bankruptcy Nos. 82 B 20655, 83 ADV 6017.

United States Bankruptcy Court, S.D. New York.

July 12, 1983.

Jeffrey L. Sapir, Yonkers, N.Y., for Sandra Cerrato.

Richard I. Ginsberg, New York City, for Ikie Friedler, Adm'r.

### DECISION ON COMPLAINT SEEKING DETERMINATION THAT DEBT DUE ESTATE OF MINNIE GANG IS NONDISCHARGEABLE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, who is serving as the administrator of the Estate of Minnie Gang, deceased, has filed a complaint seeking a determination that an obligation of the debtor that arose out of a New York State Surrogate's Court Decree is nondischargeable under Bankruptcy Code § 523(a)(2)(A). The Decree had ordered the debtor to pay to the plaintiff[1] the sum of approximately $34,000, plus interest, in connection with an action brought in the Surrogate's Court to recover the proceeds of several bank accounts and various items of jewelry which had belonged to the Estate of the decedent. The plaintiff has offered no additional evi-

---

1. The action had been commenced in the Surrogate's Court by the erstwhile Administratrix, Yetta Shafkin, who was the sister of the decedent. She resigned as Administratrix on February 3, 1982, and the Surrogate's Court then appointed the plaintiff in the instant proceeding as her successor, whereby he continued the prosecution of the Surrogate's Court proceeding.

dence in this court to support its contention that the defendant debtor obtained the funds in question by means of false pretenses, false representations and/or fraud and that the debt should be declared nondischargeable. Plaintiff has instead invoked the doctrine of res judicata, relying entirely on the Surrogate's court proceeding, including all the exhibits and documents introduced into evidence therein, as well as the September 13, 1982 decision of Surrogate Bertram R. Gelfand.

Hence, this court must decide whether the findings of fact and conclusions of law discussed in the decision of Surrogate Gelfand would necessarily compel a ruling in this court that the debt in question is nondischargeable pursuant to § 523(a)(2)(A).

The decedent, Minnie Gang, lived alone in an apartment in Bronx County until April 30, 1979, when she suffered an automobile accident and was thereafter confined in various hospitals and nursing homes until her death on November 20, 1979. During the period of her confinement in Montefiore Hospital, two bank accounts that had been held individually in the name of the decedent were converted to joint accounts with rights of survivorship in the names of the decedent and the defendant debtor, who was then known as Sandra Mandell.

One of the accounts, which was maintained at Eastern Savings Bank, became a joint account on July 10, 1979 with an initial balance of $18,812.78. The second account was held at the Dollar Savings Bank and became a joint account on July 7, 1979, with an initial balance of $23,403.85. Both accounts were closed while the decedent was confined in the St. Cabrini Nursing Home. The Eastern Savings account was closed on September 28, 1979; the Dollar Savings Account was closed on October 11, 1979. The proceeds of these accounts were then placed in separate accounts held solely in the name of the defendant debtor.

Testimony adduced at the Surrogate's Court hearing indicated that the decedent suffered from periods of disorientation, forgetfulness and occasional manifestations of bizarre behavior. When the decedent had entered the St. Cabrini Nursing Home, the admission consent form was signed by the debtor's mother, Rose Mandell. A representative of the nursing home had testified at the Surrogate's hearing that it was the practice of the nursing home to have the consent forms executed by the patient, if "competent". If the patient were not competent, then a relative or friend would execute the consent form. Testimony at the Surrogate's hearing as well as in this court indicated that there was a very close relationship between the debtor, the decedent and the debtor's mother. The debtor's sister, Rhoda Mandell, testified in Surrogate's Court and this court that she visited the decedent in the nursing home and was asked by her whether the bank accounts had been transferred to the debtor. According to the witness, upon hearing that Rhoda Mandell did not know whether the accounts had been changed, the decedent became very upset and insisted that the transfer be effectuated immediately, as she wanted the debtor to have the funds contained in the bank accounts.

In a thoughtful and well reasoned opinion, Surrogate Gelfand concluded that the only proof that was supportive of the Mandells' argument that the decedent had desired to transfer her assets to the debtor as a gift, was the testimony of members of the Mandell family. He found it impossible to give that testimony enough credence to sustain any conclusion that a gift had been made to the debtor, in light of the evidence that the joint accounts were both created during a time when the decedent was suffering from severe injuries and periods of incompetence, and in light of the decedent's former self sufficiency and desire to return to a life of independence, a fact that seemed inconsistent with divesting herself of all assets. Accordingly, Surrogate Gelfand held that the decedent had lacked the requisite mental capacity to make gifts of the accounts, and that alternatively, the accounts were at best established solely as convenience accounts. Surrogate Gelfand concluded that the proceeds of the bank

accounts at issue were property of the decedent and assets of the decedent's estate.

Noticeably absent from Surrogate Gelfand's decision was any discussion of fraud, false representation or misrepresentation. The requested relief prayed for by the plaintiff in the Surrogate Court was that an inquiry be conducted respecting the funds alleged to be in the possession and control of several respondents, one of whom was the debtor, and that the funds be delivered to the administrator. There were no allegations of fraud, misrepresentation or false representation contained in the pleadings. The respondents to the plaintiff's Surrogate Court petition defended the action on the ground that the funds were a gift from the decedent. Accordingly, Surrogate Gelfand's decision determined that issue only, i.e., whether or not the decedent had intended to make a gift of the funds.

A Decree was entered on October 19, 1982, in the Surrogate's Court, directing the debtor to turn over to the plaintiff funds totalling approximately $34,000, plus interest. Shortly thereafter, on October 27, 1982, a bankruptcy petition was filed in this court on behalf of the debtor, pursuant to Chapter 7 of the Bankruptcy Code. There were only two debts listed on the debtor's petition; the amount directed to be paid in the Surrogate's Court Decree, and a $4500 obligation owed to the debtor's son. Thereafter, the plaintiff filed a complaint on January 20, 1983 which sought to have the debt relating to the Surrogate's Decree declared nondischargeable. A hearing on the matter was held on May 16, 1983.

### DISCUSSION

■ The plaintiff relies on the doctrine of res judicata, looking to the Surrogate's Court Decree as conclusive on the issue of fraud or misrepresentation. Although the doctrine of res judicata is in many ways similar to that of collateral estoppel, it is necessary to observe the distinction and point out that the plaintiff should more properly be asserting the latter.

"[U]nder the doctrine of *res judicata,* a judgment "on the merits" in a prior suit involving the same parties or their privies *bars a second suit based on the same cause of action.* Under the doctrine of *collateral estoppel,* . . . such a judgment *precludes relitigation of issues actually litigated* and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." *Lawlor v. National Screen Service Corporation,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955).

Thus, under the collateral estoppel doctrine, matters that were actually litigated in a prior action cannot be relitigated in a different action between the parties or their privies. Hence, a party can be precluded under the doctrine of collateral estoppel from attempting a second time to prove a fact that he unsuccessfully sought to prove in a prior action. *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) (rev'd on other grounds, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). However, it is noteworthy that the nonexistence of a factual issue may be established by a judgment as well as its existence, so that the doctrine of collateral estoppel would not be applicable where an issue of fact had not been raised at all in the prior action. A prior judgment need be given no conclusive effect whatsoever unless it has established one of the material facts in issue in the subsequent proceeding. *Yates v. United States,* supra.

■ In the instant proceeding, the debtor was directed by the Bronx County Surrogate to return approximately $34,000 to the Estate of Minnie Gang because she failed to sustain her burden of proof that the funds were received as a gift. The cause of action that is now before this court does not involve whether or not the debtor received a gift of the funds in question from the decedent's estate. The issue before this court is whether the debtor's liability to the Estate of Minnie Gang, as reflected by the judgment entered against the debtor in the Surrogate's Court, represents a debt "for obtaining money . . . by . . . false pretenses, a false representation, or actual fraud . . ." within the meaning of 11 U.S.C.

§ 523(a)(2)(A). Hence, the gist of the plaintiff's case in this court is that the debtor was guilty of fraud when she obtained the funds from the decedent, a matter that was neither raised nor litigated in the Surrogate's Court. All that was determined in the Surrogate's Court was that the Estate of Minnie Gang was entitled to a judgment against the debtor for funds belonging to the decedent's estate. In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the United States Supreme Court rejected the application of the doctrine of res judicata in determining the existence of fraud in the bankruptcy sense when a prior state court judgment was not based upon a finding of bankruptcy fraud. The Supreme Court said: (page 138)

" . . . the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt."

■ It is also clear that the offensive use of the doctrine of collateral estoppel is of no avail to the plaintiff. As the Supreme Court said in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) in footnote 4, page 326, 99 S.Ct. fn. 4, page 649:

"In this context, offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant."

None of the considerations that would justify the application of the doctrine of offensive collateral estoppel is present in this case. Only those issues that were actually and necessarily decided in a prior suit are conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation, and would qualify for the application of the doctrine of collateral estoppel. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, supra. The issue of whether the funds in question were obtained by the debtor from the Estate of Minnie Gang by fraudulent conduct was neither litigated nor determined in the prior Surrogate's Court action. Accordingly, the plaintiff's reliance upon res judicata or collateral estoppel is unwarranted.

■ Absent the application of the doctrines of res judicata or collateral estoppel, the plaintiff was obliged to come forward with evidence to establish that its judgment represented a liability for obtaining money or property by fraudulent conduct, as proscribed under 11 U.S.C. § 523(a)(2)(A). As stated in *In re Callery*, 6 B.R. 527 at 529 (Bkrtcy.S.D.N.Y.1980):

"Plaintiff has the burden of proving each element of its claim under this Section. Proof of each element must be by clear and convincing evidence. 'Where dishonesty, or fraud, is at issue, the court's have typically required a higher standard of proof.' "

The plaintiff has chosen to rest upon the Surrogate's decision and judgment and has failed to come forward with any evidence that the judgment against the debtor reflects a debt "for obtaining money . . . by . . . false pretenses, a false representation, or actual fraud . . ." within the meaning of 11 U.S.C. § 523(a)(2)(A). Hence, the plaintiff has failed to sustain his burden of proving an essential element of his case, namely that the debtor obtained the funds in question by reason of fraudulent conduct.

Having failed to satisfy his burden of proof with respect to 11 U.S.C. § 523(a)(2)(A), the plaintiff's complaint must be dismissed because the plaintiff has failed to establish that the debt in question is nondischargeable.

SUBMIT ORDER on notice.