In re Steven M. SCHWARTZ, Debtor.

Elaine SEEPES, Plaintiff,

v.

Steven M. SCHWARTZ, Defendant.

Bankruptcy No. 84 B 20245.
No. 84 Adv. 6087.

United States District Court,
S.D. New York.

Jan. 2, 1985.

Cherico & Stix, White Plains, N.Y., for Elaine Seepes.

Steven M. Schwartz, White Plains, N.Y., for Steven M. Schwartz.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Plaintiff, Elaine Seepes, employed as a bank teller, made numerous loans of her own money to the debtor, Stephen M. Schwartz, a lawyer with an office in White Plains, New York, in the belief that he was financially responsible and would repay the indebtedness. Instead, he filed a Chapter 7 bankruptcy petition with this court in which he listed the plaintiff along with other people from whom he borrowed money. The plaintiff then filed a complaint objecting to the dischargeability of her $24,500 claim pursuant to 11 U.S.C. § 523(a)(2)(A) on the ground that the debtor falsely represented to her that he was financially successful and that he would repay her loans without invoking the protection of the bankruptcy law.

### FINDINGS OF FACT

1. On June 4, 1984, the debtor, Stephen M. Schwartz, a lawyer who was admitted in New York in 1973 to practice law, filed with this court his petition for relief under Chapter 7 of the Bankruptcy Code.

2. The debtor first met the plaintiff several years ago when he transacted business at the bank where the plaintiff was employed as a teller. After sending flowers to the plaintiff and inviting her to lunch and dinner, the debtor, a married man with several children, developed a close personal relationship with the plaintiff, a woman with three children who was separated from her husband.

3. In their initial conversations when they first became socially friendly, the debtor informed the plaintiff that he had a very lucrative law practice and that he wanted to expand it by remodeling his office and hiring more lawyers. The plaintiff was impressed with the debtor's affluent appearance, especially since he drove a Mercedes Benz and a BMW (the BMW was rented) and wore designer clothes. The debtor also informed the plaintiff that his children took private tennis lessons and that his wife did not have to work. Additionally, the plaintiff, who was a teller at

one of the banks where the debtor maintained an account, was familiar with the debtor's transactions in his account at her bank.

4. The plaintiff was amenable to advancing to the debtor some of the money she had inherited from her deceased father when the debtor asked her for a loan. The first loan was for $500, which the debtor promptly repaid. Thereafter, the debtor borrowed larger sums from the plaintiff, which were later incorporated in a written note dated June 24, 1983, payable to the plaintiff in installments with interest at the rate of ten percent. Some of the installments, approximating $1700, were repaid by the debtor when they came due.

5. In December of 1983, the debtor asked the plaintiff for an additional loan of $12,500. He informed the plaintiff that he was short of funds and that his checks were not clearing because the banks were making technical mistakes. The plaintiff jokingly asked the debtor if he intended to file a bankruptcy petition, which he denied. Notwithstanding this negative financial information, the plaintiff advanced an additional $12,500 to the debtor and received another signed promissory note from the debtor, dated January 25, 1984, also repayable with interest at the rate of ten percent.

6. The first time that the plaintiff learned that she could not expect to collect the unpaid amount of the debtor's notes was when she received notice from this court that the debtor filed a Chapter 7 bankruptcy petition and she was listed as a creditor for $24,500.

7. It is clear that the plaintiff's loans to the debtor before December, 1983 were influenced by the debtor's oral representations as to his successful legal practice and his financial ability to repay the loans. The plaintiff was given the impression that the debtor was affluent. Moreover, the plaintiff relied upon the debtor's promise, which he later broke, that he would repay the loans. However, these facts do not rise to the level of nondischargeability within the meaning of 11 U.S.C. § 523(a)(2)(A) be-

cause there was no proof that the debtor did not intend to repay the loans when he borrowed the money from the plaintiff. Indeed, the debtor paid some of the notes until he reached the point where he could make no further payments. Moreover, the plaintiff has failed to sustain her burden of proof as to the allegations addressed to 11 U.S.C. § 523(a)(2)(B) because the representations as to the debtor's financial status were not in writing.

8. Unfortunately, the plaintiff's expectations as to the debtor's financial ability were misplaced. However, whatever intentions the debtor may have had originally towards the plaintiff, nonrepayment was not shown to have been one of them.

## DISCUSSION

The complaint asserts nondischargeability of plaintiff's debt under 11 U.S.C. § 523(a)(2)(A) and states that the plaintiff made loans to the debtor as a result of his "materially false statements in respect to his financial condition, which ... were that debtor was totally solvent with income from his law practice sufficient to discharge said loans, the proceeds of which were to be used solely for business purposes and that he had no debts other than to plaintiff and that he would not consider declaring bankruptcy." However, there was no proof that the alleged misrepresentations as to the debtor's financial condition were in writing. Code § 523(a)(2)(A) expressly excludes from nondischargeable false pretenses, false representations, or actual fraud any "statement respecting the debtor's ... financial condition ...." This is so because subsection (B) of Code § 523(a)(2) specifically requires that a debtor's materially false statements with respect to the debtor's financial condition, to be declared nondischargeable, must have involved the "use of a statement in writing ...."

In the case of *In re Kiernan*, 17 B.R. 362, 365 (Bkrtcy.S.D.N.Y.1982) this court said:

Oral misrepresentations or pretenses as to the financial condition of the debtor

or an insider are expressly excluded from nondischargeability under subsection (A) in § 523(a)(2) because subsection (B) requires that such misrepresentations as to the debtor's or an insider's financial condition must result from the "use of a statement in writing." This distinction is explained in 1 *Norton Bankruptcy Law and Practice*, Part 27–page 18 as follows:

"Nevertheless, the Code contains an important distinction between financial statements that are in writing and those that are not. Under the Code only fraudulent written statements relating to financial condition lead to a nondischargeable debt. Therefore, a seventh element of fraud is imposed if the misrepresentation relates to financial condition; *it must be in writing."* [Emphasis added]

*Accord Engler v. Van Steinburg,* 744 F.2d 1060, 1061 (4th Cir.1984); *Blackwell v. Dabney (In re Blackwell),* 702 F.2d 490 (4th Cir.1983).

 Even if the complaint were to be treated as alleging that the debtor obtained the loans from the plaintiff as the result of a fraudulent promise to repay the loans without the filing of a bankruptcy petition, there would be insufficient proof to support this charge. In nondischargeability cases under 11 U.S.C. § 523, the plaintiff has the burden of proving each element under this section by clear and convincing evidence. *In re Cerrato,* 31 B.R. 444, 448 (Bkrtcy.S.D.N.Y.1983); *In re Buford,* 25 B.R. 477, 480–81 (Bkrtcy.S.D.N.Y.1982); *Household Finance Corp. v. Callery (In re Callery),* 6 B.R. 527, 529 (Bkrtcy.S.D.N.Y.1980). A fraudulent promise requires proof that at the time the debtor made it he did not intend to perform as promised. *In re Kiernan,* 17 B.R. at 365. The rule has been stated as follows:

Satisfactory proof of the debtor's knowledge of the representation's falsity is required to except a debt from discharge.

1 W. Norton, Bankruptcy Law and Practice, § 27.41, at 27–62 (1981). Fraud cannot be based on statements or promises to perform in the future, absent proof of scienter, because, as noted in 3 Collier on Bankruptcy, § 523.08, at 523–44 to 45 (L. King 15th ed.1984):

A mere promise to be executed in the future is not sufficient to make a debt nondischargeable . . . .

No matter how unfounded the debtor's rose-colored optimism, the plaintiff must establish by clear and convincing evidence that the debtor had no intention of repaying her when he obtained the loans. On the contrary, the evidence shows that the debtor paid approximately nine installments to the plaintiff when he reached the point where he was financially unable to continue further payments.

Thus, the evidence in this case reveals that the debtor obtained loans from the plaintiff during a social relationship that was accompanied by an appearance of affluence. This situation was shortly followed by a three-fold failure of the relationship, the resources and the repayments. These factors alone do not add up to nondischargeability under 11 U.S.C. § 523(a)(2)(A).

## CONCLUSIONS

1. The plaintiff has failed to sustain her burden of proving by clear and convincing evidence the essential factors to establish the nondischargeability of her claim under 11 U.S.C. § 523(a)(2)(A).

2. The debtor's obligation to the plaintiff is dischargeable pursuant to his discharge granted under 11 U.S.C. § 727(a).

3. The debtor is entitled to an order dismissing the complaint.

SUBMIT ORDER on notice.