**In re Barry WIENER, Debtor.**

**CITIBANK, N.A., Plaintiff,**

**v.**

**Barry WIENER, Defendant.**

**Bankruptcy No. 890–83030–478.
Adv. No. 891–8020–478.**

United States Bankruptcy Court,
E.D. New York.

Aug. 26, 1992.

**18**

Meltzer, Lippe, Goldstein & Wolf, P.C. by Bonnie Pollack, Mineola, N.Y., for plaintiff.

Abel Jack Schwartz, Garden City, N.Y., for defendant-debtor.

### DECISION ON COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court is an adversary proceeding brought on by Citibank, N.A. ("Ci-tibank" or "Plaintiff") against Debtor, Barry Wiener ("Wiener" or "Defendant"), to deem its claim non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (C). The Court having reviewed and considered the pleadings, memoranda, documentary and testimonial evidence, and the post-trial memoranda, finds that Citibank has failed to sustain its burden of proof under 11 U.S.C. §§ 523(a)(2)(A) and (C). Accordingly, and for the reasons set forth below, the debt owed to Citibank will be discharged.

### I. FACTS

On October 18, 1990, Wiener filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Twelve (12) years prior thereto, in May 1978, Wiener and his wife jointly applied for and were issued a City–One Checking Plus Overdraft Account ("overdraft account") and a Citibank Checking Account ("checking account") bearing the same account number. In the event there were insufficient funds in the Defendant's checking account to cover checks written, the overdraft account would cover the discrepancy between the actual amount of funds in the account and the deficiency. The overdraft account had an assigned credit line of $7,700.00 on the date of filing.

Wiener utilized the accounts from June 1978 until August 1990, but the account remained open to at least the date of filing. In October 1988, Wiener had no debt owing to Citibank in connection with the overdraft account. During the period of November 1988 through August 1990, Wiener accrued a debt of $8,200.00 as of the filing date, through the use of the overdraft account to cover the insufficiency of funds in his checking account. This debt remains due and owing to Citibank.

In November 1978, Wiener also applied for and was issued a Citibank Ready Credit Account ("ready credit account"). Wiener was permitted to borrow money from Citibank under this account, without providing additional financial information. On the

date of filing, the ready credit account had an assigned credit line of $20,300.00. Wiener continually incurred and reduced debt in this account from 1978 until the filing of the petition. In July 1988, Wiener had no debt owing to Citibank in connection with the ready credit account. During the period of August 1988 through November 1990, however, Wiener began incurring debt without repaying the same in full, and as of the filing date, had incurred debts of approximately $22,000.00 through his use of the ready credit account. The aforementioned amount is presently due and owing to Citibank.

During the years 1988 through 1990, Defendant maintained four (4) accounts with Citibank: (i) a checking account; (ii) an overdraft account; (iii) a ready credit account; and (iv) an insured market rate account (a savings account).

Throughout the time these accounts were open, the Debtor maintained the accounts in the same manner, withdrawing from one, depositing into another, and always paying at least the minimum required and at times, making substantial deposits to repay the debt. During the time period from 1988 to the petition date, the Debtor never accrued charges which exceeded his credit limits, and any amounts in excess of his credit limits were attributed to accrued interest or service charges.

Wiener admits to being a "degenerate gambler" who had sought help from Gamblers Anonymous in the past. He had several markers and credit lines with gambling casinos located in Atlantic City. The casinos would accept only checks drawn on Defendant's savings account in repayment of Defendant's debts to them.

Prior to and during 1988 through 1990, Defendant was self-employed by BTM Industries, Inc. ("BTM"), an insulation sales business. During 1988, BTM's business faltered and according to Wiener's petition and schedules, he realized no income from his self employment in 1990. According to Defendant's petition and schedules, his expenses from 1988 to 1990 exceeded his income. Notwithstanding that Wiener's expenses exceeded his income throughout the years 1988 through 1990, he paid his expenses from a $300,000 home equity credit line he had obtained in 1988, which was secured by a lien on his house. In 1988, the Debtor had approximately $150,000 in the equity line. The Defendant also invested substantial sums in the stock market, which sums had varied in value during 1988 from over $500,000 to $150,000 (Tr. at 34). In 1989 his equity line available was approximately $100,000. (Plaintiff's Exhibit "1"). Defendant made continuous substantial deposits into his Citibank accounts from outside sources throughout the twelve (12) year period. (Tr. at 84). Thus, between 1988 to approximately July 1990, the Defendant had considerable funds available from his credit line to repay his debts to Citibank.

Wiener believed that the value of his stocks and other investments would continue to increase. Wiener's tax returns during the relevant time period reflect that Wiener made many stock transactions, evidencing Wiener's attempts to increase the value of his stock. Wiener's rationale for paying only minimal amounts on his debts to Citibank from 1988 through 1990 was that the interest accruing on his investments exceeded the interest rate charged by Citibank. (Tr. at 35–36). Wiener also anticipated that his business would rebound and provide him with sufficient capital to pay his debts. (Tr. at 64–65).

From 1988 to the petition date, Defendant borrowed (or at times won) money from a casino, and then deposited the funds into his ready credit account in order to keep that account open. Defendant then took the money from the ready credit account and repaid the casino any monies loaned him. At other times, Defendant obtained money from casinos, placed the money into his ready credit account in order to make a payment upon the account, transferred the funds from that account to his savings account, and drew checks from his savings account to repay the casino.

Although Citibank always had access to an examination of Defendant's banking transactions, and as a matter of course investigates accounts when payments are

not being registered, it did not challenge the manner in which Wiener maintained his accounts prior to his bankruptcy filing. Citibank did not investigate Defendant's accounts during the time period from 1988 to the petition date when Wiener failed to pay off the balance on his accounts at any given time. Citibank continued to extend credit to the Defendant based upon the payments he regularly made upon his accounts, and in fact was satisfied with the maintenance of Wiener's accounts to the extent that Citibank continually voluntarily increased his credit line. As late as April 30, 1990, the Debtor was advised that he was a preferred account and that the percent to be charged him for borrowed funds was to be reduced two (2%) percent as against other borrowers. (Defendant's Exhibit "C").

Prior to the filing date, Defendant lost his money because his business failed, he had gambling debts, and the stock investments he had made collapsed in value leaving him with insufficient funds to pay his ordinary household expenses. His home was subsequently foreclosed.

## II. DISCUSSION

The issue the Court must decide is whether Wiener incurred his debts by false pretenses or by making false representations, thereby denying him a discharge of these debts in bankruptcy. 11 U.S.C. § 523(a)(2)(A) provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by ...

(A) false pretenses, a false representation, or actual fraud ...

This exception to discharge furthers the policy that the honest but unfortunate debtor obtains a fresh start while the dishonest debtor does not benefit from his wrongdoing. *Grogan v. Garner*, — U.S. —, —, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *In re Haig*, 135 B.R. 698, 699 (Bankr.Fla.1991).

In order to meet its burden to obtain an exception to discharge, a creditor must prove each of the following elements by a preponderance of evidence: (1) the debtor obtained money through a false representation; (2) the representation was known by the debtor to be false; (3) the representation was made with the purpose and intention of deceiving the creditor; (4) the creditor relied on the representation and the reliance was reasonably founded; and (5) the creditor sustained a loss as a result of the representation. *Grogan v. Garner*, — U.S. at —, 111 S.Ct. at 659; *In re Tesmetges*, 74 B.R. 911 (Bankr. E.D.N.Y.1987), *aff'd In re Tesmetges*, 86 B.R. 21 (Bankr.E.D.N.Y.1988).

The lines of credit extended to the Defendant in the present case are analogous to cases where credit is extended by the use of credit cards. Therefore, the facts are to be analyzed similarly. With respect to most of the Debtor's accounts, credit is extended on an ongoing basis, and is not to exceed a stated maximum. A minimum payment on the credit account is required each month.

In examining Citibank's allegation that Wiener made false representations, it must be kept in mind that the creditor has the burden to establish that at the time the debtor obtained the loans, he had no intention of repaying them. *In re Schwartz*, 45 B.R. 354, 357 (S.D.N.Y.1985), *In re Gans*, 75 B.R. 474 (Bankr.S.D.N.Y.1987). Since proving the debtor's actual intent in the context of drawing on an open line of credit or the use of credit cards is difficult, courts have inferred the debtor's intent to deceive from circumstantial evidence. *In re Senty*, 42 B.R. 456, 460 (Bankr.S.D.N.Y.1984), *In re Buford*, 25 B.R. 477, 482 (Bankr. S.D.N.Y.1982). The factors courts have taken into consideration include:

1. the age and sophistication of the debtor;

2. the length of time between the charges made and the filing of the petition;

3. the frequency and amount of charges;

4. the financial condition of the debtor at the time he incurred the charges;

5. whether the debtor was employed;

6. the extent to which the credit limit of the account is exceeded;

7. whether there was a sudden change in the debtor's use of the credit card; and

8. whether the items purchased were necessaries or luxuries.

*In re Senty*, 42 B.R. at 460; *In re Buford*, 25 B.R. at 482; *In re Ciavarelli*, 16 B.R. 369, 370 (Bankr.E.D.Pa.1982); *In re Dougherty*, 84 B.R. 653, 657 (9 Cir. BAP 1988).

■ In the credit card cases mentioned above, the courts found an intention to deceive where a large number of purchases were made a few weeks before bankruptcy, the charges were inconsistent with the debtor's previous use of the card, the debtor made no payments to the account, and the debtor was insolvent when the purchases were made. On the other hand, when the court did not find a "shopping spree" on the eve of bankruptcy, but an accrual of charges over a long period of time that could be deemed routine behavior of the debtor, the court did not find an intention to deceive.[1]

■ Citibank alleges that since the Debtor was hopelessly insolvent during the relevant time period, fraudulent intent can be inferred. It is true that fraudulent intent can be inferred where a debtor is "hopelessly insolvent." *In re Gans*, 75 B.R. 474 (Bankr.S.D.N.Y.1987) (overt misrepresentation need not be established where a debtor's "hopeless insolvency" would make repayment of a debt impossible). Citibank relies on the fact that Wiener's expenses exceeded his income from 1988 through 1990 to show "hopeless insolvency." Solvency of a "person" is defined by comparing assets to liabilities, not by an ability to pay expenses from income. 11 U.S.C. § 101(32) (1992 Supp.). Since Citibank has provided no evidence that Wiener's liabilities exceeded his assets through the period 1988 to 1990, Citibank has failed to meet its burden of proof.

■ In the case at hand, Citibank has not proven that Wiener actually or impliedly possessed an intent to deceive. The Court concludes that at the time Wiener incurred these debts, he had access to funds beyond his employment income, and therefore, the Defendant's acts of making minimum payments to these accounts, without other affirmative acts or badges of fraud, cannot support a finding of intent to defraud. Wiener may have foolishly relied on a $300,000 line of credit and on stock investments and gambling ventures to generate more income in order to pay down the debt due Citibank and other debts, but such optimism does not support a finding that he falsely represented he could repay Citibank the entire amount. Wiener utilized the bank accounts in the same manner since 1978, often allowing his balance to accrue to the maximum allowed, while only making minimum monthly payments. The debt in question was accrued over three years, not on the eve of filing, and Wiener did not accrue charges in excess of his credit lines. Such overages were attributed to interest charges only. Accordingly, the Court cannot find an intent to deceive or to misrepresent from the circumstances surrounding Wiener's use of these accounts.

■ Even assuming arguendo that Wiener made false representations by withdrawing money and transferring funds from other accounts, Citibank has failed to prove by a preponderance of evidence that it reasonably relied on the Debtor's representations. Courts have held that if a representation is found to be false, a creditor must show actual and reasonable reliance. *In re Tesmetges*, 74 B.R. at 916. An ordinary care standard determines the reasonableness of reliance. *Id.* This standard imposes a duty on a commercial creditor to make at least a reasonable inquiry as to the validity of the alleged representations made by the debtor. *Id.*

The facts reveal that during the twelve years Wiener maintained his accounts at

---

1. The fact that a debtor renders only the minimum payments necessary is insufficient to find an intention to deceive. *In re Lyon,* 8 B.R. 152 (Bankr.D.Maine 1981).

Citibank, Wiener frequently carried a balance, relying on the overdraft protection Citibank offered him. The facts also indicate that the accounts were maintained in the same manner throughout the twelve year period. Citibank had Wiener's banking records from 1978 to the petition date, yet it raised no objection to the maintenance of his accounts in this manner until after the filing of his bankruptcy petition, and in fact increased his credit lines during the twelve year period. In addition, even if Wiener's method of account transfers from 1988 constituted altered behavior, Citibank failed to establish intent to defraud, or actual reliance on Wiener's "altered conduct" to extend credit from 1988 to 1990, nor did Citibank investigate into Wiener's method of account transfers during the entire period from 1988 to the petition date.

As to Plaintiff's charge for section 523(a)(2)(C) relief, any such use of Plaintiff's money will be non-dischargeable.[2]

## III. CONCLUSION

Citibank has failed to prove by a preponderance of the evidence that the alleged fraudulent misrepresentations were made by Wiener and that Citibank reasonably relied upon them. Accordingly, Wiener's debt to Citibank will be discharged, except for withdrawals, if any, that were made pursuant to section 523(a)(2)(C) of the Bankruptcy Code. Submit an order in accordance with the Court's decision.

---

[2]. 11 U.S.C. § 523(a)(2)(C) states, in pertinent part:

Consumer debts aggregating more than $500 for 'luxury goods or services' within 40 days of filing the petition or cash advances aggregating more than $1,000 within 20 days of the filing of the petition are presumed to be non-dischargeable.