**In re John C.E. FOLEY and Kathy M.G. Foley, Debtors.**

**FIRST BANK SYSTEM, N.A., Plaintiff,**

**v.**

**John C.E. FOLEY and Kathy M.G. Foley, Defendants.**

**Bankruptcy No. 92–31163.**
**Adv. No. 93–7005.**

United States Bankruptcy Court,
D. North Dakota.

June 14, 1993.

Keith J. Trader, Fargo, ND, for plaintiff.

Henry H. Howe, Grand Forks, ND, for defendant/debtor.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter arises by Complaint filed January 28, 1993, by which First Bank System's N.A. (First Bank) seeks a determination of the dischargeability of a loan made to the Debtor, John C.E. Foley, through a credit line account.[1] The Complaint is premised upon sections 523(a)(2)(A), (B) and (C) of the Bankruptcy Code. Trial was held on May 26, 1993, and from the evidence adduced at trial together with a brief stipulation of facts, the material facts are as follows:

### Findings of Fact

The Debtor at all times material, was a member of the United States Air Force stationed at the Grand Forks Air Base, Grand Forks, North Dakota. Sometime in 1990 First Bank sent him a form inviting him to enroll in the "First Bank Express Line", advising him that he was "pre-approved for an exclusive $5,000.00 line of credit". The $5,000.00 line of credit was conditioned upon a minimum household income of $30,000.00. The form, denoted as an "acceptance certificate" contained a box for noting acceptance of the offer and requested the applicant's place of employment, annual household income, home phone, business phone, date of birth and social security number. Beyond this brief information the form asked for no listing of assets, no credit or borrowing history,

nor any list of outstanding liabilities. On June 11, 1990, the Debtor filled in the form indicating his annual household income to be $32,000.00. Precisely when the credit line was opened or drawn upon is not in evidence, however, First Bank did open the line of credit and provided the Debtor with "checks" with which to access the line of credit. The Debtor made regular draws against the line of credit from 1990 through October 1992, and made regular monthly payments on the account from October 1990 through October 2, 1992.

No bank officer testified regarding how the credit line solicitation worked, how an applicant came to be "pre-approved", what use was made of the application information, or what procedures, if any, were employed to verify the information or obtain further credit information.

Although in the acceptance form the Debtor indicated a household income of $32,000.00, the Debtor's actual 1990 income was $14,400.00 and that of his wife was $2,336.00. In fact the couple's financial situation became fairly desperate by 1992 to a point where they were unable to meet their basic living expenses. They had purchased a home in Grand Forks which needed substantial repairs and which apparently could not be sold without those repairs being made. Acknowledging their financial situation to be desperate, the Debtor by the fall of 1992 turned to the First Bank line of credit, writing a check to himself for $500.00 on October 9, 1992, and another for $500.00 to his wife on October 16, 1992. According to the Debtor, these funds were used to make essential home repairs. Four days following the October 16th draw, the Debtor called Attorney Howe regarding the possibility of bankruptcy. At trial the Debtor stated that by this time he and his wife were struggling with unpaid bills, had no savings and were unable to live paycheck to paycheck. By this time their unsecured debt exceeded $32,000.00 and their secured debt was over $44,000.00. Attorney Howe provided them with essential bankruptcy information including what debts were and were not dischargeable.

1. Prior to trial co-defendant Kathy M.G. Foley was voluntarily dismissed as a party defendant.

Following receipt of this relevant bankruptcy information, the Debtor wrote two more checks against the credit line, the first one on October 22, 1992, in the sum of $1,250.95, the proceeds of which were used to pay down his wife's student loan. On October 24, 1992, another check in the sum of $850.00 was made out to the Home of Economy for the purchase of a new mattress, a chair and winter clothes for the children.

A voluntary petition under Chapter 7 was filed on December 2, 1992. The four October draws against the credit line totaling $3,100.95 remained outstanding at the time of the bankruptcy petition and today remains unpaid.

### Conclusions of Law

First Bank, relying upon sections 523(a)(2)(A) and (B) asserts that the Debtor in completing the credit line application made a materially false statement giving rise to nondischargeability under section 523(a)(2)(B) and that he later drew against the line of credit while insolvent and with no intent to repay giving rise to a claim under section 523(a)(2)(A). Section 523(a)(2)(B) as it requires use of a statement in writing is focused upon the application form and initial opening of the credit line in June 1990. Section 523(a)(2)(A) while similar in the requisite elements of proof need not be premised upon a written statement and in this case necessarily focuses upon the events of October 1992 when the Debtor made the final four draws against the line of credit. These events are independent of each other and will be discussed separately.

Sections 523(a)(2)(A) and (B) provide as follows:

§ 523. **Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

1.

In order to prevail under section 523(a)(2)(B) First Bank must establish by a preponderance of the evidence that:

(1) the debtor made a materially false representation,

(2) with the intent to defraud,

(3) First Bank reasonably relied upon the representation, and

(4) sustained the loss or damage as a result.

*In re Mutschler,* 45 B.R. 482 (Bankr. D.N.D.1984); *In re Benore,* 108 B.R. 797 (Bankr.M.D.Fla.1989).

In the present case the element of false representation can be implied from the acceptance form itself in that the Debtor represented his household income to be substantially more than it actually was. The element of intent is a more difficult concept as it is not susceptible of direct proof but must be gleaned from surrounding circumstances. From the evidence presented little is known of the Debtor's financial circumstances in June 1990 except for income levels. It is reasonable to assume, however, that the Debtor, in completing the acceptance form wanted to satisfy the minimum income level necessary to qualify for the "pre-approved" credit line. This, the court believes, was the likely reason he stated his household income to be $32,-000.00. Because the Debtor knew he would not qualify for the credit line if his true income were disclosed, the court must conclude that he intended to deceive First

Bank by this statement. The income information was material because it painted a substantial untruth misrepresenting information which if correctly stated would on the face of the acceptance certificate alone have disqualified the Debtor. This brief discussion leads to the final and most difficult element of proof under section 523(a)(2)(B). To ultimately prevail under this section the evidence must show that First Bank *reasonably* relied upon the false representation. First Bank has presented absolutely no evidence from which the court could conclude that it reasonably relied upon the scanty information provided by the Debtor. It presented no evidence regarding just what a "pre-approved" credit line is or what if any effort was made to verify the information given. In order for there to be reasonable reliance there is a duty imposed upon commercial lenders to make at least a reasonable inquiry as to the validity of the information. *In re Tesmetges*, 74 B.R. 911, 916 (Bankr.E.D.N.Y.1987). It strikes this court as irresponsible for a lender to extend a $5,000.00 line of credit based solely upon the information on the acceptance certificate. As a result the court concludes that First Bank has failed in its proof as to the requisite element of *reasonable* reliance under section 523(a)(2)(B).

### 2.

■ We turn now to section 523(a)(2)(A) which as mentioned focuses not upon the acceptance certificate itself but upon the Debtor's series of draws made against the line of credit in October 1992. Under section 523(a)(2)(A) the requisite elements of proof are the same as those under section 523(a)(2)(B). However, in the context of draws against an open line of credit the facts are analyzed in a fashion similar to situations where credit has been extended by use of a credit card. *In re Wiener*, 144 B.R. 17, 20 (Bankr.E.D.N.Y.1992). This is so because draws against a credit line, like charges on a credit card, are not susceptible of direct proof of misrepresentation or reliance. Courts accordingly have held that when a person uses a credit card or draws against a credit line knowing of his inability and lack of intent to repay, he has obtained property through false pretenses. *In re Hinman*, 120 B.R. 1018 (Bankr. D.N.D.1990); *In re Cox*, 150 B.R. 807 (Bankr.N.D.Fla.1992). The element of representation is implied from the mere use of the card or the mere draw against the line of credit. By such draw a debtor impliedly represents to the lender that he has both the intent and ability to make repayment. *Hinman, supra* 1021. In the case at bar the element of representation is easily met by the fact that the Debtor drew on the line of credit in October 1992.

■ Proof that a draw against a credit line was false and done with an intent to deceive the lender focuses solely upon the debtor's intent at the time the draws were made. In such situations the requisite intent to deceive is normally inferred from objective factors suggesting that a debtor knew or should have known that he/she would be unable to make repayment. These factors are the following:

(1) the length of time between the charges made and the filing of bankruptcy;

(2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

(3) number of charges made;

(4) the amount of the charges;

(5) the financial condition of the debtor at the time the charges were made;

(6) whether the charges were above the credit limit of the account;

(7) whether the debtor made multiple charges on the same day;

(8) whether or not the debtor was employed;

(9) the debtor's prospect for employment;

(10) the financial sophistication of the debtor;

(11) whether there was a sudden change in the debtor's buying habits;

(12) whether the purchases were made for luxuries or necessities.

*In re Hinman, supra; In re Cox, supra; In re Wiener, supra.*

650

■ A number of these elements exist in this case. All four of the draws were made in October 1992 and within sixty days of the bankruptcy filing. They were all made at a time when the Debtor and his wife were experiencing extreme financial hardship and at a time when they were contemplating bankruptcy, indeed the last two draws totaling $2,100.00 were made after they had talked to an attorney about bankruptcy. Moreover, assuming an average joint monthly income in 1990 of $1,398.00, the total of the four October draws ($3,100.00) exceeded the gross household income by 222%! This, at a time when, in the Debtor's own words, they were already under water and living paycheck to paycheck. From these facts the court must conclude that when the Debtor made the four October 1992 draws against the line of credit he knew he had no ability to repay. Thus, the element of fraudulent intent necessary under section 523(a)(2)(A) has been met.

■ As with credit card cases, direct proof of reliance is difficult but as opposed to situations involving financial statements or loan application situations, direct proof is not required. First Bank extended to the Debtor a $5,000.00 line of credit that could be accessed through drafts written by the Debtor similar to a regular checking account. Irrespective of the bank's failure to prove that it reasonably relied upon the acceptance form in initially opening the line of credit in 1990, once the Debtor had established a solid account repayment history, First Bank could reasonably expect that the Debtor would maintain the account in the same manner into the future. *See In re Nahas*, 92 B.R. 726 (Bankr.E.D.Mich. 1988) (where a bank acquiesced in ongoing check overdrafts relying upon the debtor's past history of covering them.) Due to a previous history of regular monthly repayment, the bank might reasonably have expected such repayment to continue. In leaving the credit line open it relied upon the Debtor's indicated ability to repay and could reasonably have expected that draws would not be made in excess of that repayment ability. By October 1992 a credit check would not have been suggested by the Debtor's repayment history. In short, there was nothing about the Debtor's subsequent use of the credit line that would have tipped off the bank that the Debtor's financial failure was imminent or that the October 1992 draws were beyond any ability to repay.

The court accordingly concludes that the reliance has been established and that the resulting loss of $3,100.95 in unpaid credit line draws is nondischargeable under section 523(a)(2)(A).

3.

The final exception to discharge is premised upon section 523(a)(2)(C). This section raises a presumption of nondischargeability as regards certain consumer debts and consumer credit. The facts in the context of this section will not be discussed in view of the court's decision as regards section 523(a)(2)(A).

For the foregoing reasons the court finds that all elements necessary for nondischargeability under section 523(a)(2)(A) have been met and accordingly judgment may be entered in favor of First Bank System, N.A. and against the Debtor, John C.E. Foley in the sum of $3,100.95, said sum being nondischargeable under section 523(a)(2)(A) of the United States Bankruptcy Code.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**