In re Marianne G. SEGAL, Debtor.

HARTFORD ACCIDENT & INDEMNITY COMPANY and Hartford Fire Insurance Co., Plaintiffs,

v.

Marianne G. SEGAL, Defendant.

Bankruptcy No. 892–86262–20.
Adv. No. 893–8074–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Feb. 10, 1994.

---

Stanford M. Altschul, Friedman, Altschul & Poepplein, Mineola, NY, for plaintiffs.

Stan Y. Yang and Scott Y. Stuart, Office of U.S. Trustee, Garden City, NY.

## DECISION AND JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

## PRELIMINARY STATEMENT

This matter comes before the Court upon an adversary proceeding ("Adversary Proceeding") commenced by the above-captioned plaintiff ("Plaintiff") against the above-referenced debtor ("Debtor").

The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1) and 1334(a) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to sections 157(b)(2)(I) and 157(b)(2)(O) of title 28.

For the reasons set forth below, the Court holds that the relief requested by Plaintiff is **DENIED**, Debtor is granted judgment that the debt owed Plaintiff is dischargeable, and the Adversary Proceeding is **DISMISSED** and may be **CLOSED** after entry of this judgment.

1. Pursuant to section 523(a)(2) of the Bankruptcy Code, an individual debtor is not granted a discharge from debts incurred by, for example,

## FACTS

The Debtor filed a petition for bankruptcy relief under chapter 7, of title 11, United States Code ("Bankruptcy Code") on November 10, 1992. Plaintiff commenced the Adversary Proceeding by the filing of a complaint with the Court on February 26, 1993 ("Complaint"). Pursuant to the Adversary Proceeding, Plaintiff seeks judgment determining that the debt of $7,625.67 owed it is non-dischargeable.[1] On March 18, 1993, acting pro se, Debtor filed her answer.

In its Complaint (dated February 26, 1993, at pages 2–3), Plaintiff alleges the following. Prior to her filing for bankruptcy relief, Debtor conducted a travel agency business as a principal of Danjon Travel, Inc. ("Danjon") and Travalong Tours, Ltd. ("Travalong"). In order to issue airline tickets, Debtor was required to obtain a surety bond, which Plaintiff furnished to Debtor, Danjon and Travalong ("Bond"). Debtor agreed to indemnify the Plaintiff for payments made on behalf of Danjon and Travalong pursuant to the Bond. Danjon and Travalong did subsequently issue airline tickets for which neither they nor Debtor paid and, pursuant to the Bond, Plaintiff made payment to the appropriate entity for the tickets. Plaintiff demanded but never received reimbursement from Debtor for its payment and asserted a claim against Debtor therefor.

Furthermore, Plaintiff alleges:

At the time these transactions occurred, the [Debtor] knew or should have known that Danjon Travel, Inc., and Travalong Tours, Ltd., would not pay for the aforesaid airline tickets. The defendant obtained the surety bond and issued the airline tickets under false pretenses and false representations. The issuance of the airline tickets by the [D]ebtor was an implied representation that the [D]ebtor had the intent and wherewithal to pay for the tickets. [T]he surety relied on the representations and extended its surety. In fact, it is clear that the representation of the ability and intent to repay were false. This is a clear case in which the [D]ebtor issued

"false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2) (1993).

airline tickets without any intention or wherewithal to pay the same. The factors in the case all evidence intent to defraud plaintiffs.

Complaint of Plaintiff, dated February 26, 1993, at 2–3.

The Debtor's answer provides:

When [Plaintiff] decided to sue me personally in 1992 for Travalong's debts, why wasn't fraud mentioned then? They claimed I was personally responsible for the debts because of an indemnity agreement I signed. There was no mention of fraud then.... In regards to [paragraph] 7 of their complaint, it is stated that I obtained surety bond and issued airline tickets under false pretenses and false representation. My bond was issued and renewed every year, based on certified financial statements, and I in turn paid my premiums. At the time the bond was renewed, my finances were in good shape, but as business declined the money went very fast. [T]here was never any false representation. I had all intentions of paying every bill, and did so until the very end, when all my money was gone and I couldn't borrow anymore.... [T]here was obviously no intention of fraud on my part, and the only damage in this summons is the waste of the court's time, and mine. ... I respectfully request that these charges be dismissed due to lack of evidence....

Debtor's Answer, dated March 11, 1993, at 3.

■ Clearly, issues of fact were created by Plaintiff's and Debtor's pleadings. When the Complaint was filed on February 26, 1993, our Clerk's Office issued a summons which gave notice of a pre-trial hearing before the Court scheduled for April 13, 1993. Neither party sought any type of discovery, and a trial of the issues was scheduled to take place before the Court on September 22, 1993 ("Trial Date"). Only the Plaintiff appeared on the Trial Date, however.[2]

## LEGAL DISCUSSION

Because a judgment determining that a debt is non-dischargeable is serious, and because sufficient issues of fact were created by the parties' pleadings, the Court determined it necessary and proper on the Trial Date to conduct an inquest into whether Plaintiff could establish a prima facie case. *United Countries Trust Co. v. Knapp (In re Knapp)*, 137 B.R. 582, 584–85 (Bankr.D.N.J.1992); *cf. Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir.1981); *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir.1987); *Silverman v. Katz (In re Katz)*, 146 B.R. 617, 620–21 (Bankr.E.D.N.Y.1992) ("objections to discharge must be construed strictly against the objectant and liberally in favor of the debtor.") (numerous citations omitted). Thus, the Court permitted Plaintiff to establish its right to the judgment requested.

The Court will first discuss what Plaintiff established on the Trial Date, then will examine whether what was established satisfies the necessary elements of Plaintiff's claim for relief.

### A. Case Presented by Plaintiff

■ Plaintiff immediately called its only witness, a gentleman employed by Plaintiff, whose title is "Claims Supervisor". The direct testimony of the Claims Supervisor es-

---

**2.** On the Trial Date, Plaintiff presented "Plaintiff's Trial Memorandum of Law" ("Memorandum") to the Court. Plaintiff did not discuss or refer to the contentions made in the Memorandum during trial. To the extent the Memorandum raises new arguments, it is improper since Plaintiff did not obtain leave of the Court or written consent of its adversary to amend its pleading. Fed.R.Bankr.P. 7015 (1993). Furthermore, no certificate of service was filed and the Memorandum was presumably not served upon Plaintiff's adversary in violation Rules 5(a), 5(d) of the Federal Rules of Civil Procedure, made applicable herein by Federal Rule of Bankrupt Procedure 7005. Fed.R.Bankr.P. 7005 (1993); Fed.R.Civ.P. 5(a) (1993) ("every pleading subsequent to the original complaint ... and similar paper shall be served upon each of the parties."); *id.* 5(d) (1993) ("All papers after the complaint required to be served upon a party, together with a certificate of service, shall be filed with the court within a reasonable time after service...."). Having not been served, the Memorandum technically constitutes an ex parte communication. For these reasons, in addition to Plaintiff's failure to file the Memorandum at least one day prior to the Trial Date, the Court holds that it can not properly consider the Memorandum.

tablished the following. In his position, he handles surety bond claims. In 1987, Plaintiff accepted an application for a surety bond from the Debtor as president of Danjon, doing business as Travalong (previously defined as the "Bond"). The agreement between Plaintiff and Debtor, signed by the Debtor, included both corporate and personal indemnification agreements. The arrangement was that the Debtor, operating a travel agency, obtained airline tickets through the Airline Reporting Corporation ("ARC"). ARC requires travel agencies to obtain surety bonds to guarantee the obligations of the travel agencies. ARC notified Plaintiff sometime during the existence of this business relationship, that payments had not been received by Debtor for tickets which were issued. Plaintiff wrote to Debtor and her corporations attempting to have ARC paid directly from Debtor; to the best of the Claims Supervisor's knowledge, ARC was not paid. Plaintiff determined that tickets were in fact issued to Debtor by ARC for which Debtor did not pay. Plaintiff then paid $7,625.67 to ARC pursuant to Plaintiff's obligation and responsibilities under the Bond. ARC's claim against Debtor was then assigned to Plaintiff.

After it had established these facts through the direct testimony of the Claims Supervisor, Plaintiff rested.

## B. Plaintiff's Right to Relief Claimed

We now analyze whether a prima facie case was made.

■ There are five elements that a plaintiff must establish in order for a Court to render judgment determining that a debt is non-dischargeable. *Kovitz v. Tesmetges (In re Tesmetges)*, 74 B.R. 911, 914 (Bankr. E.D.N.Y.1987), *aff'd*, 86 B.R. 21 (E.D.N.Y. 1988), *aff'd*, 862 F.2d 304 (2d Cir.1988); *Kotan v. Austin (In re Austin)*, 132 B.R. 1, 3 (Bankr.E.D.N.Y.1991). The standard is by a preponderance of the evidence. *Grogan v.*

*Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Citibank v. Wiener (In re Wiener)*, 144 B.R. 17, 20 (Bankr.E.D.N.Y. 1992); *First Dep. Nat'l Bank v. Pursley (In re Pursley)*, 158 B.R. 664, 667 (Bankr. N.D.Ohio 1993).

The Court will state and discuss each element separately.

(1) The debtor must make an express or implied false representation. Plaintiff's only witness made no reference to any express representation and thus the Court holds that none was established. At best, Plaintiff could hope for the Court to infer an implied representation by Debtor that she had the financial ability to pay for the airline tickets by her mere action of placing the order therefor.[3] *Cf. In re Union Bank of the Middle East, Ltd.*, 127 B.R. 514, 519 (E.D.N.Y.1991) ("courts typically have found implied representations in two contexts: (1) when a debtor uses a credit card to charge purchases ... or (2) when a debtor makes payment with a check that is subsequently dishonored.") (citations omitted); *Norwest Bank DesMoines v. Stewart (In re Stewart)*, 91 B.R. 489, 494 (Bankr.S.D.Iowa 1988). Absent proof of an express representation, our analysis must necessarily continue as if Plaintiff demonstrated that Debtor made this implied representation.

(2) The representation must be made with knowledge that it was false at the time it was made. Plaintiff neither alleged nor proved—and the Court will not infer—that Debtor's implied representation was false, let alone made with knowledge that it was false.[4]

(3) The false representation must be made with the intent to deceive. Analysis of whether Plaintiff established that Debtor had intended to deceive requires that Plaintiff first demonstrate that Debtor made a false representation, which Plaintiff did not.

---

3. Of course, this would be an implied representation made to ARC; but, since Plaintiff now stands in the place of ARC, it is the equivalent of a representation made to Plaintiff.

4. Simple discovery could have lead to evidence probative of the issue of Debtor's financial ability

at the time the airline tickets were purchased. Admissible evidence could have provided the Court with the necessary objective factors used to determine Debtor's financial ability and intent to pay. *See In re Calder*, 907 F.2d 953, 955–56 (10th Cir.1990).

(4) The creditor must have reasonably relied upon the debtor's misrepresentation(s). Plaintiff must establish that a misrepresentation was made before it can hope to demonstrate its reasonable reliance thereon.

(5) Finally, the creditor must establish that it was damaged. Again, a misrepresentation is required before Plaintiff can be heard to complain of damages.

## CONCLUSION

Plaintiff has failed to establish at least three, if not all five necessary elements of its claim for relief. Although the Court can infer that Debtor made an implied representation as to her financial ability to pay for the airline tickets she ordered, no evidence was adduced, and thus the Court cannot hold, that this implied representation was false, that it was made with knowledge that it was false, and that it was made with intent to deceive Plaintiff. Obviously, the Court cannot hold that Plaintiff relied upon and was damaged by a misrepresentation that has not been proved. The Court holds, therefore, that the relief claimed by Plaintiff in the Adversary Proceeding is **DENIED;** Debtor is granted judgment that its debt to Plaintiff is determined and declared **DISCHARGEABLE.** The Adversary Proceeding is to be closed following entry of this judgment.

**SO ORDERED, ADJUDGED AND DECREED.**