**In re Michael F. ERDHEIM, Debtor.**

**RETIREMENT ACCOUNT, INC., Custodial IRA, FBO George SAHAGIAN, Plaintiff,**

v.

**Michael F. ERDHEIM, Defendant.**

Bankruptcy No. 893–83360–478.
Adv. No. 893–8436–478.

United States Bankruptcy Court,
E.D. New York.

April 4, 1995.

Macco, Hackeling & Stern by C. Steven Hackeling, Huntington, NY, for plaintiff.

Smith, Buss & Jacobs, New York City, for defendant.

### DECISION ON ADVERSARY COMPLAINT OF THE RETIREMENT ACCOUNT, INC., CUSTODIAL IRA, FBO GEORGE SAHAGIAN OBJECTING TO THE DISCHARGE OF CERTAIN DEBTS OF MICHAEL E. ERDHEIM

DOROTHY EISENBERG, Bankruptcy Judge.

The matter before the Court is an adversary proceeding commenced by the Retirement Account, Inc., Custodial IRA, FBO George Sahagian (the "Plaintiff") objecting to the discharge of a certain debt of Michael F. Erdheim (the "Debtor") pursuant to Sections 523(a)(2)(B), 727 and 1141(d)(3)(C) of the Bankruptcy Code. The Court having reviewed and considered the pleadings, documentary and testimonial evidence, the posttrial memoranda, and the relevant case-law, finds that the plaintiff has sustained its burden of proof under Section 523(a)(2)(B). Accordingly, and for the reasons set forth below, the debt owed to the Plaintiff is deemed non-dischargeable.

### FACTS

On June 14, 1993, the Debtor filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code which was thereafter converted to a proceeding under Chapter 7 pursuant to Order of this Court. The Petition listed a secured debt due to the Plaintiff in the amount of $253,500.00. The instant adversary proceeding was timely commenced by the filing of a Complaint by the Plaintiff on September 21, 1993. An Answer was interposed on behalf of the Debtor on October 25, 1993. A trial on the issues herein was held before this Court on January 9, 1995.

The Plaintiff and the Debtor entered into an arrangement wherein the Plaintiff was to

loan to the Debtor and his wife the sum of $250,000.00. Significantly, the Plaintiff's Florida counsel that assisted in implementing this arrangement is the brother-in-law of the Debtor herein. As security for the loan, the Debtor was to provide to the Plaintiff a second mortgage on property located at 1751 Deerfield Road, Watermill, NY (the "Watermill Property") and a first lien on a cooperative apartment located at 464C Brick Kiln Road, in Sag Harbor, NY (the "Sag Harbor Collateral"). This collateral was to be transferred to the Plaintiff by the prior lender, after payment. At the time of this contemplated transaction, the mortgage on the Watermill Property was in default and a foreclosure action had gone to judgment, with a foreclosure sale pending. The parties had knowledge of the status of the property.

In connection with this loan, the Debtor made certain representations to the Plaintiff in a written and executed loan agreement and related documents (collectively, the "Loan Agreement"). Among the representations in the Loan Agreement was the following clause:

(i) The financial statements delivered by BORROWERS to LENDER and dated January ——, 1993 are true and correct and contain all information necessary to accurately and completely disclose BORROWERS' financial condition, including all contingent liabilities, and there has been no material adverse change in any of the information contained therein since the date thereof;

On or about January 18, 1993 a closing was commenced on this transaction. The Plaintiff appeared by its counsel, who conducted all preliminary matters and it was this same counsel who testified at trial. During or prior to the commencement of the closing, the Plaintiff's counsel requested that the Debtor furnish a written statement concerning his financial circumstances. Before any money was paid to the Debtor or the prior lender, the Debtor provided to the Plaintiff a handwritten financial statement dated January 18, 1993 (the "Financial Statement") which stated: "This shall confirm that my assets over liabilities exceed $2,500,000 ...

This consists of at least a) law firm receivables b) co op 425 E. 58th St c) Holiday Inn."

After the Financial Statement was provided to the Plaintiff's counsel on January 18, 1993, but prior to the continuation of the closing on January 19, 1993, the Loan Agreement was provided to the principal of the lender, Mr. Sahagian in Florida for approval. The funds did not change hands until January 19, 1993. Until January 19, 1993, Samuel Patent (the former lender), his counsel, as well as Great Western, the first mortgagee on the Watermill Property, among others, remained unpaid. The funds were paid on January 19, 1993 comprised largely of a certified check dated January 19, 1993 in the amount of $224,986.82. The funds were paid only after the principal of the lender received the written statement and reviewed it.

At and before the time of the closing, going as far back as 1992, the Debtor, a then practicing attorney was under investigation and there were numerous pending proceedings by the Hearing Panel of the Departmental Disciplinary Committee for the First Judicial Department with regard to serious professional misconduct. In fact, by Order dated July 1, 1993, a mere five months after the closing, the Departmental Disciplinary Committee's petition confirming the Hearing Panel's Report and Recommendation was granted and Mr. Erdheim was disbarred from practice as an attorney and counselor-at-law in the State of New York.

### DISCUSSION

The facts as set forth herein are not disputed by the parties. The legal issue herein pertains generally to whether the debt owed by the Debtor to the Plaintiff is nondischargeable on the basis that it was, pursuant to Sec. 523(a)(2)(B) a debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, proper-

ty, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with the intent to deceive;

. . .

The issue before the Court pertains more specifically to whether the Plaintiff reasonably relied on the written statement(s) provided by the Debtor. Based upon the pleadings, the exhibits introduced at trial, including among others, a transcript of the deposition of the Debtor conducted on February 22, 1994, and the testimony adduced at trial, this Court finds that the Plaintiff reasonably relied on a materially false written statement respecting the Debtor's financial condition that was made by the Debtor.

■ In order for a creditor to meet its burden to obtain an exception to discharge, the creditor has the burden of proof by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

The specific elements necessary under Bankruptcy Code Section 523(a)(2)(B) have been established herein are as follows:

The requisite "written statement" that forms the basis for the claim is the handwritten Financial Statement that the Debtor submitted to the Plaintiff. As previously stated, despite the relationship of the parties, the Financial Statement was requested of the Debtor by the Plaintiff. Before any money was paid to the Debtor or the prior lender, the Debtor provided the statement that was dated January 18, 1993, to the Plaintiff during the course of the closing of the loan transaction. Although the closing began before the Financial Statement was provided to the Plaintiff, the transaction was not completed and the funds did not change hands until such Financial Statement was submitted to the Plaintiff's counsel and provided to the principal of the lender, Mr. Sahagian in Florida for approval.

■ This Court finds that the Debtor's Financial Statement was materially false. A materially false statement is a statement that "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally

effect the decision to grant credit." *In re Nance*, 70 B.R. 318, 321 (Bankr.N.D.Tex. 1987), *citing In re Denenberg*, 37 B.R. 267 (Bankr.D.Mass.1983). Materiality should be determined by comparing the debtor's actual financial condition with the picture painted by the debtor. *Id.* at 321 *citing In re Valley*, 21 B.R. 674 (Bankr.D.Mass.1982). In evaluating whether a false statement is material, a germane inquiry is "whether the lender would have made the loan had he known the debtor's true financial condition." *In re Bogstad*, 779 F.2d 370, 375 (7th Cir.1985). This Court takes note that less than six months after the closing, in his petition, the Debtor scheduled his accounts receivable at $2,000,-000 and listed his total assets at $4,148,930.00 and liabilities at $3,504,581.64 for a net equity of $644,348.36. Without some explanation for the substantial decrease in value of the stated net equity of the Debtor within six (6) months after the January 18, 1993 statement, this Court concludes that the statement provided to Plaintiff, on its face, was false or at least recklessly inaccurate and based on hope and not on fact.

This Court now focuses its analysis upon the Debtor's representation in the Financial Statement that his assets included, among other things, his law firm receivables. This statement must be read in conjunction with paragraph 8(i) of the Loan Agreement which is a representation by the Debtor that in his Financial Statement he has disclosed his "financial condition, including all contingent liabilities, and there has been no material adverse change in any of the information . . ." These two representations paint a substantially untruthful picture in light of the circumstances of the Debtor at the time these representations were made. The Debtor failed to disclose to the Plaintiff the pendency of numerous proceedings and investigations by the Disciplinary Committee of the Supreme Court, Appellate Division, First Department. Aside from the obvious misrepresentation as to the contingent liability that by necessity existed as a result of the pendency of these proceedings, the Debtor failed to disclose his potential disbarment or suspension from the practice of law and the likelihood that as a result of those proceedings,

his income stream might be jeopardized and the consequential impaired and doubtful nature of the collectability of his accounts receivable. "[I]t is well-established that writings with pertinent omissions may qualify as "materially false" for purposes of § 523(a)(2)(B)." *Matter of Jordan,* 927 F.2d 221 (5th Cir.1991) *citing In re Biedenharn,* 30 B.R. 342 (Bankr.W.D.La.1983). This Court finds that the January 18, 1993 statement provided to the Plaintiff by the Debtor was materially false.

The next element under Section 523(a)(2)(B) pertains to whether the written statement(s) were with respect to the Debtor's financial condition. The facts evidence that this is not in dispute and as such, this Court will not inquire further with regard to same.

The issue of whether the Plaintiff reasonably relied on the written statement is deserving of further analysis. This Court believes that the mere fact that the Financial Statement was requested and provided as a prerequisite to the release of the funds evidences the fact that the Plaintiff intended to rely on said information and that the Debtor was aware of Plaintiff's reliance upon same. Despite the Debtor's arguments to the contrary, this Court finds that the Plaintiff's reliance on the Debtor's Financial Statement, although executed at the eleventh hour just prior to closing, was not unreasonable. It may not be the most prudent lending practice, but in this case, possibly because Plaintiff's counsel was related to the Debtor, it was prudent of the Plaintiff to demand an up-to-date financial statement from the borrower prior to advancing any funds.

■ The reasonableness of a creditor's reliance is to be determined based upon the particular facts and circumstances of the case. *First Bank v. Mullet (In re Mullet),* 817 F.2d 677, 679 (10th Cir.1987). The court must consider the "totality of the circumstances." *In re Young,* 995 F.2d 547 (5th Cir.1993) *citing In re Coston,* 991 F.2d 257 (5th Cir.1993). Courts have deemed a creditor's reliance on a debtor's financial statement to be reasonable, even where the creditor failed to take steps to verify the information. *In re Ashley,* 903 F.2d 599 (9th Cir.

1990); *In re Mullet,* 817 F.2d at 681. In making its determination, this Court has concluded that there were no "red flags" that would have alerted the Plaintiff of the possibility that the representations relied upon were not accurate ... *In re Coston,* 991 F.2d at 261. This Court is satisfied from the totality of the evidence that the Plaintiff's reliance was reasonable. This determination is based in part upon the circumstances surrounding the loan, the relationship of the parties, the fact that the information provided was not inconsistent and that the collateral was familiar to the Plaintiff. *See e.g., In re Mullet,* 817 F.2d at 681 (citing *Northern Trust Co. v. Garman (In re Garman),* 643 F.2d 1252 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981)); *Matter of Jordan,* 927 F.2d at 224.

It is this Court's further opinion that the case of *In re Wiener,* 144 B.R. 17, 21 (Bankr. E.D.N.Y.1992) that has been cited by the parties herein is factually dissimilar. *Wiener* pertains specifically to Section 523(a)(2)(A), and the standard set forth therein pertains specifically to Section 523(a)(2)(A), not 523(a)(2)(B). The analysis in that case was not based upon a determination of reasonable reliance.

■ This Court does not believe there to be an issue of fact as to whether the Debtor signed the Loan Agreement and provided the Financial Statement with the intent to deceive. It is evident from the facts herein that the representations made by the Debtor were not an accurate depiction of his financial affairs. "Intent to deceive may be inferred from use of a false financial statement to obtain credit." *In re Pryor,* 93 B.R. 517, 518 (Bankr.S.D.Tex.1988). Intent to deceive may also be inferred where the debtor knew or should have known the falsity of his statement. *In re Valley,* 21 B.R. at 674. It is further clear from the testimony that the written statement was required by Plaintiff prior to the Plaintiff's extending the loan and that the request for the writing put the Debtor on notice that it would be relied upon by Plaintiff.

## CONCLUSION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Sections 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I).

Based upon the foregoing, this Court finds that the Plaintiff has sustained its burden of proving each of the elements set forth in Section 523(a)(2)(B) of the Bankruptcy Code and as such, the debt that may be determined to be due to the Plaintiff from the Debtor is non-dischargeable.

Settle an Order in accordance with this decision.