In re Francis Henry
**VANDERLOOS, Debtor.**

**CLARKS FORK NATIONAL
BANK, Plaintiff,**

v.

**Francis Henry
VANDERLOOS, Defendant.**

**Bankruptcy No. 485–00507.
Adv. No. 486/0012.**

United States Bankruptcy Court,
D. Montana.

Sept. 17, 1986.

814

Michael M. Morse, Billings, Mont., for defendant/debtor.

Craig D. Martinson, Billings, Mont., for plaintiff.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

The Plaintiff Clarks Fork National Bank (Bank) filed a complaint seeking a determination of non-dischargeability of its debt under Section 523(a)(2)(A) of the Code. After answer, trial of the cause was held on July 30, 1986, and thereafter the parties have submitted proposed Findings of Fact and Conclusions of Law, and Briefs in support of its position.

The Debtor commenced a debtor-creditor relationship with the Bank in 1982 for a farm loan. The Debtor operated a parcel of farm property owned by a Montana corporation called Vanderloos Land and Livestock, a family corporation owned by the Debtor's parents, Henry and Dorothy Vanderloos. The Debtor was Secretary of the corporation. The dispute in this case arises from financial transactions which occurred beginning in March, 1983, when the Bank loaned the Debtor funds on two separate notes, one for $75,000.00 to purchase livestock and the other for $55,000.00 for operating expenses. The notes were dated March 11, 1983. As security for the $55,000.00 note, the bank officer, Robert Lee, requested as collateral a mortgage on the Debtor's farm. For that purpose, the Bank prepared a corporate resolution to be executed by the corporate president, Henry Vanderloos, authorizing Frank, the Debtor, to execute a mortgage on real property situated in Sections 1, 2, 11 and 12, Township 6 South, Range 23 East, Carbon County, Montana. After the loan was approved and some proceeds were disbursed, the Debtor delivered to the Bank a corporate resolution dated March 28, 1983, authorizing the loan and mortgage and ostensibly signed by Henry F. and Dorothy C. Vanderloos. Both parents deny signing the resolution. The Debtor signed the mortgage as Secretary of the corporation, his signature was notarized by Lee and the mortgage was filed of record. According to the testimony of Lee, the Debtor assured Lee that the signatures on the corporate resolution were genuine, and after such assurance was made, the balance of the loan proceeds of $33,600.00 was disbursed. The mortgage on the property, however, was not recorded until April 6, 1983, after the Bank secured the corporate resolution.

In January, 1984, the Debtor informed the Bank he would not be able to pay the notes on the due date in March, 1984. He attempted to secure other financing, suggested by the Bank, but was unable to do so. Therefore, in May, 1984, the Bank, upon the Debtor's request, agreed to re-write the notes, and the Debtor agreed to give as additional security a mortgage on the farm of Henry and Dorothy Vanderloos, which covered real property in Sections 14 and 15, Township 6 South, Range 23 East, Carbon County, Montana. The two notes were re-written for a total of $93,805.35, due on November 1, 1984. The Bank did not request a written title report on the Section 14 and 15 property, but called an abstracter with Carbon Title Guaranty Company and received an oral report that such property was indeed owned individually by Henry and Dorothy Vanderloos. That request was in error, because the property was in fact owned by the family corporation. In addition to said collateral in the real property, the Bank took as security a first lien on all crops, farm machinery and continued its second lien on the real property mortgaged in April, 1983, by a new mortgage on that

property. The Bank prepared a mortgage for the signature of Henry and Dorothy for their property, gave it to the Debtor, and requested he return it with their signatures. At no time, did the Bank officer ever contact Henry and Dorothy about the mortgage of their property. The Debtor executed a new mortgage as Secretary-Treasurer of the corporation to the land in Sections 1, 2, 11 and 12, without further corporate authorization being requested by the Bank. His signature on the mortgage was notarized by Lee. The Debtor then delivered to Lee the second mortgage, ostensibly signed by Henry and Dorothy. Lee notarized the mortgage, which acknowledgment stated that Henry and Dorothy "personally appeared" before him, and executed the mortgage. That fact is untrue. Both mortgages were then recorded on June 5, 1984. Not only did Henry and Dorothy not own the real property in Sections 14 and 15, it being owned since 1980 by the corporation, but both deny ever signing the mortgage as represented by the Debtor and notarized by Lee. The Debtor admits he forged their signatures on the mortgage.

The loan went into default for non-payment of principal and interest by the due date of the notes and the Bank commenced foreclosure proceedings on the mortgaged real property. After start of such foreclosure action, the corporation took the position that the Debtor lacked corporate authority to execute the mortgage to Sections 1, 2, 11 and 12, and that the signatures on the other mortgage to Sections 14 and 15 were a forgery. The deposition of Henry and Dorothy, taken in the foreclosure action, and introduced in this case without objection, confirmed such facts. As a result, the Bank entered into an agreement dated June 6, 1985, with Henry, Dorothy and the corporation, wherein it released its collateral in all of the real property so as not to interfere with a sale of the property to a third party by the corporation of the land in Sections 1, 2, 11 and 12. Obviously, the Bank realized by such date that the mortgage on Sections 14 and 15 was of no value. The Debtor thereafter filed a Chapter 7 petition on October 4, 1985, seeking to discharge the debt owed to the Bank, which presently is in the amount of $92,127.07 for all obligations.

At hearing on this cause, the Debtor admitted the directors of the family corporation never held a directors' meeting to pass the corporate resolution of March 28, 1983. He nevertheless insists that the signature on the resolution is his mother's, Dorothy, who he claims also signed his father's signature. His testimony at the first meeting of creditors was to the contrary, where he admitted he forged both signatures, but he now recants that testimony with the explanation that he didn't want to bring his parents into the matter. Contrasted to his present story, is the sworn testimony of his mother, who denies signing either the corporate resolution or mortgage. The Debtor concedes he forged the signatures of both parents on the May, 1984, mortgage, but did so under circumstances where the Bank never inquired who signed the mortgage. As to the first and second mortgages to Sections 1, 2, 11 and 12, he stated he believed he had authority to mortgage that property because he was an officer of the company, thought the corporation resolution was valid, and he was in fact farming the property. He stated that the Bank officer told him in May, 1984, upon refinancing the loans, that if his parents did not mortgage their property as additional collateral, the Bank would sell his farm, and under such threat, he forged the mortgage to Sections 14 and 15. The Debtor further contends that Lee's reliance on the abstracter's oral report was in error and he should not be charged with that mistake. He further alleges that Lee's notary of his parents' signature was a sham, which indeed it was. The Debtor contends he told the Bank officer that the land in Sections 14 and 15 belonged to the corporation, but Lee ignored his representations, content to rely on the mistaken abstracter's report. In sum, the Debtor's position is that new mortgages to Sections 1, 2, 11 and 12 were in fact signed by the Debtor, under circumstances where he believed he had

corporate authority to do so. As to his forging of the Section 14 and 15 mortgage, he contends the Bank suffered no loss or damage, because it was void *ab initio*, having never belonged to his parents since 1980, and the Bank's lack of reasonable care, together with the illegal notarization of signatures, caused their own loss of collateral on that property. He is critical that the Bank voluntarily satisfied each mortgage without a judicial determination as to the validity of the mortgage on the Section 1, 2, 11 and 12 property.

Under Section 11 U.S.C. 523(a)(2)(A), a debt is not dischargeable:

"(2) for money, property, services, or an extension, renewable or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement representing the Debtor's or an insider's financial condition;"

The case of *In Re Boyer (H & H Lumber v. Boyer)*, 62 B.R. 648, 649 (Bankr.Mont. 1986), holds:

"For the creditor to sustain a finding of non-dischargeability under Section 523(a)(2)(A), it must satisfy its burden of proof on five elements, which are set forth in *In Re Houtman*, 568 F.2d 651, 655 (9th Cir.1978):

'(1) The Debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.'

\*    \*    \*    \*    \*    \*

The creditor in a case involving Section 523(a)(2)(A) must prove each element by clear and convincing evidence. *In Re Huff*, 1 B.R. 354 (Bankr. Utah 1979)."

It is also well-settled that exceptions to discharge are to be strictly construed against the objecting creditor and liberally in favor of the Debtor, so as to give the Debtor a new opportunity in life and a clean field for future effort, unhampered by the pressure of pre-existing debt. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); 3 *Collier on Bankruptcy*, Section 523.05A at P. 523–15 (15th Ed.). The exception to discharge in most instances, including 523(a)(2)(A), are intended to prevent a Debtor from avoiding through bankruptcy the consequences of his wrongful conduct. *In Re Cross*, 666 F.2d 873 (5th Cir.1982).

At the outset, it is necessary to point out that the alleged false representation concerns only the $55,000.00 note, for it was this obligation on which the Bank requested and received the mortgages on the real property. By April 9, 1984, that total obligation for principal and interest was $57,863.34, which was rolled into the May 28, 1984 note of $93,805.35. By February 12, 1986, according to such note, the sum of $25,042.69 had been paid through recovery of insurance. It is not clear as to the source of payment of such sum, nor how it was allocated among each note by the Bank. It is further clear, that after the forged corporate resolution of March 28, 1983, the sum of $33,600.00 in principal from the $55,000.00 note was disbursed to the Debtor. Further, on the original borrowing of $75,000.00 to purchase cattle, the Bank received payment from the cattle sold of about $55,000.00, which balance plus interest of $35,942.01 was rolled into the final note of $93,805.35. Thus, the maximum damages which can be recovered by the Bank deal only with the $55,000.00. Since the source of the payment of $25,042.66 is unexplained, and the Bank has the burden of proof on damages, I deem it is necessary to credit that amount against the $57,863.34 balance, leaving damages not to exceed $32,820.68. Further, each parcel of mortgaged property was subject to a first mortgage to the Federal Land Bank. In fact, Henry Vanderloos in his deposition testified that the sale of Sections 1, 2, 11 and 12 for $150,000.00 would be insufficient to pay the FLB mortgage, thus indicating no equity in Sections 1, 2, 11 and 12.

If such is the fact, the Bank was undersecured.

■ I hold that the conduct of the Debtor in execution of the mortgages to Sections 1, 2, 11 and 12 coupled with the attendant forgery of the corporate resolution of March 28, 1983, was a false representation materially relied upon by the Bank in granting credit to the Debtor. The Debtor's testimony on the execution of the corporate resolution was so varied from hearing to hearing, including requests for admissions, as to be unworthy of belief. I find he forged the signatures on the corporate resolution, and such was a false representation, given with the intent to deceive the Bank. The Debtor knew he had no corporate authority to mortgage the corporation property or Sections 1, 2, 11 and 12, acknowledged there was never a corporate meeting for such purpose as falsely represented in the March 28, 1983 resolution, and forged the signatures of his parents on that document. Such facts are clear proof of his intent to deceive. The Bank relied upon such facts as true, even though they were false, for the Bank advanced the loan proceeds of $55,000.00 in reliance on the Debtor's representations.

■ As to the evidence dealing with the forged mortgage instruments relating to Sections 14 and 15, I give it no weight whatsoever. The Bank's actions dealing with that property were as much a making of their error as was the Debtor's false representation which is based on his admitted forgery of the mortgages. Lee's acknowledment as notary of the purported signatures of the Debtor's parents, acting while an agent of the Bank, is inexcusable. The law in Montana dealing with notary acknowledgments is very clear. Under Section 1–5–201, M.C.A., the acknowledgment of an instrument must not be taken unless the officer taking it, such as Lee, knows the person who executed the instrument. Lee's acknowledgment states that Henry and Dorothy Vanderloos personally appeared before him when they executed the mortgage. Such fact is simply not true, and thus the acknowledgment is worthless. Further, the reliance on the mistake of the abstracter solicited by the Bank is as much a proximate cause of the Bank's loss as is the false representation of the Debtor. The parties are *in pari delicto*, and thus as to the mortgage on Sections 14 and 15, I find no basis for relief to the Bank.

The last matter has, then, to do with the damages sustained by the Bank as a proximate result of the Debtor's false representations concerning the collateral described as Sections 1, 2, 11 and 12. As noted earlier in this opinion, the Bank must prove such damages by clear and convincing evidence. As I understand the Bank's position, it would not have loaned the $55,-000.00 to the Debtor if it knew that the mortgage on Sections 1, 2, 11 and 12 was of no value. Stated differently, the Bank's reliance on the false representations of the Debtor led it to loan the Debtor $55,000.00, and such sum has now been lost to the Bank as a result of the false representations of the Debtor. In this regard, then, it does not matter that such sections of land had no equity when sold. The proximate result of the Debtor's wrongful conduct was the loan of $55,000.00 itself, which has gone unpaid in a substantial amount. As noted earlier, a sum of $25,042.69, paid on February 12, 1986, has been credited against the entire debt of $93,805.35. Since the Bank has the burden of proof to show by clear and convincing evidence that such payment was for another obligation, I will treat such payment as made on the $55,000.00 note, and thus find damages to the Bank in the sum of $32,820.68, without interest, as provided by the renewal note of May 28, 1984.

IT IS ORDERED the Clerk shall enter judgment in favor of the Plaintiff Clarks Fork National Bank and against the Defendant Francis Henry Vanderloos in the sum of $32,820.68 and that such sum is non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. 523(a)(2)(A).