In re Harry TESMETGES, Debtor.

Philip M. KOVITZ, Plaintiff,

v.

Harry TESMETGES, Defendant.

Bankruptcy No. 180–07354–260.
Adv. No. 182–0265.

United States Bankruptcy Court,
E.D. New York.

June 17, 1987.

---

Steinberg, Daniels, Lasky & Siegel by Barry M. Lasky, Garden City, N.Y., for debtor.

Philip M. Kovitz, New York City, pro se.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

### TESMETGES

The matter under consideration in this Chapter 7 case is an adversary proceeding seeking a determination of the dischargeability of a debt pursuant to § 523(a)(2)(A) of the Bankruptcy Code. Based upon the evidence adduced at the trial held on May

18, 1987, this court concludes that the plaintiff has failed to allege facts and produce evidence sufficient to render a reasonable conclusion in favor of the allegations contained in the complaint. Because the degree of proof presented by the plaintiff was far short of the clear and convincing standard necessary to sustain the burden under § 523(a)(2)(A), plaintiff has failed to establish a *prima facie* case. Therefore, the relief requested is denied and the debt is deemed dischargeable.

## BACKGROUND

Harry Tesmetges, the debtor (hereinafter "debtor" or "Tesmetges" where appropriate), filed a petition for relief under Chapter 7 of the Bankruptcy Code on November 28, 1980. The bankruptcy judge to whom the case was referred was Honorable Manuel J. Price who remained in charge until his retirement in May of 1984 when I succeeded him.

The plaintiff, Philip Kovitz ("Kovitz"), commenced the present adversary proceeding on May 12, 1981, while the case was still pending before Judge Price. However, Judge Price decided to hold the trial of this proceeding in abeyance pending the conclusion of the trials of other adversary proceedings instituted by the trustee in this case. One of those actions, which seeks to set aside an alleged fraudulent conveyance or to establish an equitable lien, was recently concluded by me and is awaiting my decision.

It is undisputed from the complaint and record taken at the trial that in November of 1975 Kovitz loaned the sum of $10,000 to a corporation known as H.T. Thomas Co., Inc. ("H.T. Thomas") of which Harry Tesmetges and his wife, Terry Tesmetges, were the principals. Both had been engaged in the real estate business and had used the corporate name in several transactions involving the purchase, sale and mortgage of residential property in Queens County, New York.

The loan was represented by Kovitz' check for $10,000 made payable to H.T. Thomas which he delivered to Tesmetges and his wife. In return, Kovitz received a bond together with a second mortgage on a single-family residential home owned by H.T. Thomas located at 133–10 Linden Boulevard, South Ozone Park, Queens, New York (the "property"). At that time the property was rented to tenants ("tenants") who had been living there as husband and wife for a number of years. Both the bond and the mortgage were executed by H.T. Thomas as mortgagor or obligor. The stipulated rate of interest was eighteen (18%) percent per annum or $150 per month. According to the facts as alleged in the complaint the mortgage was to become due on or before July 1, 1976 at which time the property was to be sold.

At the time Kovitz entered into the transaction the property had been the subject of a prior and senior mortgage held by State Funding, Inc., in the approximate sum of $15,000 (the "first mortgage"). Thereafter, in August of 1976, H.T. Thomas was declared in default on its first mortgage and foreclosure proceedings were commenced. The foreclosing mortgagee was Federal First Mortgage Association, the successor in interest to State Funding. At the foreclosure sale the first mortgage was satisfied, but there were no remaining monies to be applied to the second mortgage held by Kovitz, and thus the debt due from H.T. Thomas to Kovitz remained, and continues to remain, outstanding and unpaid.

In December of 1976, Kovitz commenced an action in the Supreme Court of the State of New York against H.T. Thomas, Harry and Terry Tesmetges (the "defendants") to recover the $10,000 he had loaned to H.T. Thomas. Kovitz consistently contended throughout the state court action and the present adversary proceeding that H.T. Thomas is the alter ego of Tesmetges and/or his wife. The defendants failed to answer the complaint and judgment was taken by default. They thereupon moved to reopen the judgment and vacate the default on the grounds that they had not been served, they had no knowledge of the suit and were denied an opportunity to defend on the merits. The motion was granted, and upon the posting of a bond the default was vacated and the action was

set down for trial. Shortly thereafter, but before the suit proceeded to trial, Harry Tesmetges filed his within petition in bankruptcy. Although the action in the State Court was thereupon stayed as against the debtor pursuant to § 362 of the Bankruptcy Code, it went into limbo as to H.T. Thomas and Terry Tesmetges inasmuch as Kovitz became actively involved in this bankruptcy case. The action is still pending in the State Court.

Shortly after the petition in bankruptcy was filed, Judge Price appointed Robert Musso ("Musso"), a member of the Interim Trustee Panel of this Court, as interim trustee of the debtor's estate. Thereafter, Kovitz, holding himself out to be a creditor of the debtor, attended the first meeting of creditors under § 341 of the Code and supported the election of Musso as the permanent trustee. There was no other candidate and Musso was elected. Judge Price permitted him to retain Kovitz as his attorney by reason of Kovitz' familiarity with the debtor and his affairs. During my involvement with this case, I learned that Kovitz had known the debtor, his wife and her family for years prior to the transactions involved in this proceeding. He had been acquainted with them socially and had also represented Mrs. Tesmetges as her attorney in her divorce proceedings prior to her marriage to Mr. Tesmetges. In addition, Kovitz visited her family who lived in Peru. Apparently, it was this friendship which brought Kovitz to the debtor and his wife in connection with the loan and mortgage transactions which gave rise to the issue before this Court.

In the complaint, plaintiff alleges that the debtor and/or his wife procured a loan by false pretenses and false representations in the amount of $10,000 from the plaintiff on behalf of H.T. Thomas. The complaint sets forth the alleged representations generally as follows:

(1) That the property was to be purchased by the tenants then residing there.

(2) That the property was the subject of a contract of sale.

(3) That the contract of sale had been approved by an appraiser or inspector of the Federal Housing Administration.

(4) That the debtor and his wife represented that "the sale was 'sure' and that it most likely would take place before July 1, 1976."

(5) That the loan would be repaid on or before July 1, 1976.

Kovitz contends that these representations were false and in making the loan he relied on them to his detriment. Therefore, he argues the debt is allegedly owed to him by the debtor and should be deemed nondischargeable as provided for by § 523(a)(2)(A) of the Bankruptcy Code, which states in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) For money, property, services, or an extension, renewal, or refinance of credit, to the extent obtained by—

(A) False pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

## DISCUSSION

It is well-settled that to succeed in a nondischargeability claim under § 523(a)(2)(A), the plaintiff must prove each of the following elements:

(1) The debtor made the representation;

(2) That at the time the debtor knew the representations were false;

(3) The debtor made them with the intention and purpose of deceiving the creditor;

(4) The creditor relied on the representation and the reliance was reasonably founded; and

(5) The creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

*In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986), *In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978), *In re Vanderloos,* 64 B.R. 813, 816 (Bkrtcy.D.Mont.1986); *In*

*re Carneal,* 33 B.R. 922, 925 (Bkrtcy.E. D.Va.1983).

As an introductory point, it is instructive to note that the underlying purpose of the Bankruptcy Code is to enable a debtor to make a fresh start, unhampered by the pressure of pre-existing debts. *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Stellwagen v. Clum,* 245 U.S. 605, 617, 38 S.Ct. 215, 218, 62 L.Ed. 507 (1918). Consistent with that policy, exceptions to the dischargeability of debts are strictly construed against the complaining creditor and liberally in favor of the debtor. *In re Black,* 787 F.2d 503, 505 (10th Cir.1986); *In re Vanderloos, supra,* 64 B.R. at 816. Thus, the burden of proof under § 523(a) rests squarely upon the creditor to come forward with clear and convincing evidence sufficient to support every element of the claim. *In re Bombard,* 59 B.R. 952, 954 (Bkrtcy.D.Mass.1986), *Matter of Weinstein,* 31 B.R. 804, 807 (Bkrtcy.E.D.N.Y. 1983). The plaintiff must demonstrate that the debtor is guilty of actual or positive fraud involving moral turpitude or intentional wrong doing, not merely implied fraud. *In re Bombard, supra,* 59 B.R. at 954.

After a review of the complaint, answer and evidence adduced at the hearing, this Court concludes that the plaintiff has failed to make out a *prima facie* case under § 523(a)(2)(A). At the trial, the Court requested the plaintiff to proceed with the proof of his case. Plaintiff, however, failed to present clear and convincing evidence of any of the elements necessary to show the debt nondischargeable. There was no evidence produced at trial in support of the allegations in the complaint that the debtor, in fact, made the representations; that at the time they were made the debtor knew they were false, or when made the debtor's intent was to deceive the plaintiff. In this respect, plaintiff failed in the first three elements necessary to make out a *prima facie* case for the nondischargeability of a debt. With respect to the last two elements, the plaintiff offered no proof that he relied on the representation or, if he did rely, that said reliance was

reasonably founded, and that his damages were the proximate result of the representations having been made. Instead, Mr. Kovitz embarked on what can only be characterized as a "fishing expedition," intended only to cause delay, confusion and add expense to this protracted case.

Examining the plaintiff's first contention, that Tesmetges and his wife represented that the property was the subject of a contract of sale, that the sale was "sure," and that it would most likely take place before July 1, 1976 (Plaintiff's complaint, paragraphs 5, 7), the court finds that the plaintiff failed to produce any evidence to support these allegations. On the other hand, the debtor, examined at length by Kovitz, testified in a clear, concise and credible manner with respect to the events surrounding the subject loan transaction. Contrary to the allegations in the complaint, the debtor testified that the property was never the subject of a contract for sale nor did he ever represent it as such to the plaintiff. (Tr. 5/18/87, pp. 95–96). The debtor testified that when Kovitz loaned the money he represented only that he had a possible purchaser for the property because he reasonably believed the tenants would purchase the property. (Tr. 5/18/87, pp. 84, 85, 89, 92). According to the debtor, the tenants had repeatedly expressed an interest in purchasing it. Indeed, the lease between the debtor and tenants provided the latter with an option to buy and the right of first refusal if the debtor decided to sell the property. The debtor's testimony that the tenants made substantial improvements to the property during their tenancy is consistent with the debtor's other testimony that the tenants were interested in purchasing the property. (Tr. 5/18/87, pp. 92, 100).

The court finds from the testimony elicited from the debtor that at the time of the loan he reasonably believed and represented only that he was confident that he would enter into a contract with the tenants for the sale of the property in the future. In response to the court's inquiry, the debtor testified that he understood the

difference between a contract of sale and the option to buy contained in the tenants' lease and that he never misrepresented to Kovitz that the option was as an actual contract of sale. (Tr. 5/18/87, p. 106). Unfortunately, when the debtor offered the property for sale to the tenants, they were unable to purchase it due to financial difficulties. (Tr. 5/18/87, p. 34). Indeed, the tenants failed to make the monthly rent payments due the debtor and fell into default. In turn, the debtor was unable to keep current on the mortgage payments to the first mortgagee and the foreclosure proceeding was commenced.

Because the debtor's statement with respect to the property related to future action, that is, its possible sale, his failure to effectuate the sale due to circumstances entirely beyond his control cannot be defined as a false pretense or false representation. By reason of the foregoing, the court holds that the plaintiff has not met its burden of proving by clear and convincing evidence that the debtor obtained the loan by false pretenses, false representations, or by actual fraud.

With respect to the terms of the second mortgage granted by H.T. Thomas to Kovitz, the debtor testified, contrary to the allegations in the complaint, that it was due in six (6) months *or when the property was sold.* Importantly, Kovitz failed to produce the second mortgage at trial even though he admitted that document is within his possession. (Tr. 5/18/87, pp. 86–87). Furthermore, it is undisputed that Tesmetges paid Kovitz the eighteen (18%) percent interest payments due on the second mortgage commencing January 1976 through and including August 1976. The fact that Tesmetges made the payments during these months supports the position that he dealt with Kovitz in good faith and intended to fulfill his obligations under the mortgage. In addition, the undisputed fact that Kovitz received an interest payment in August of 1976 further contradicts his allegation that the mortgage was due by its terms on or before July 1, 1976.

■ Viewing the facts as alleged in the complaint in a light favorable to the plaintiff, and assuming, for the purposes of this discussion only, that the plaintiff can prove that the debtor made the alleged representations, it would remain to be demonstrated that as a matter of both fact and law that plaintiff's reliance thereon was reasonable. A creditor must show actual and reasonable reliance. *Matter of Bisbach,* 36 B.R. 350, 353 (Bkrtcy.W.D.Wis. 1984). Case law suggests that where a representation is proved to be factually false an ordinary care standard determines the reasonableness of reliance in § 523(a)(2)(A) cases. *Id. See also In re Hagedorn,* 25 B.R. 666 (Bkrtcy.S.D.Ohio 1982). As stated in *Bisbach,* "The extent of the duty to exercise ordinary care depends upon the relative sophistication of the parties, the nature of the representations, and the ease of conducting an investigation." *Matter of Bisbach, supra,* 36 B.R. at 353, *See also In re Sahadi,* 49 B.R. 954, 956 (Bkrtcy.N.D.Ohio 1985) (reasonable reliance is that degree of care which would be exercised in an average business transaction by parties under similar circumstances); *In re Saunders,* 37 B.R. 766 (Bkrtcy.N.D.Ohio 1984). This standard imposes a duty on the plaintiff-creditor to make at least a reasonable inquiry as to the validity of the alleged representations made by the defendant-debtor.

■ During the course of the trial, Kovitz admitted that at the time the alleged representations were made he was an attorney duly licensed to practice law in the State of New York who had knowledge of and experience in the field of real estate law. However, he never requested to see or review a copy of the alleged contract nor did he authorize a title search or an appraisal of the property to protect his interest. In addition, he failed to ascertain the status of the first mortgage which easily could have been investigated by a letter or other inquiry. Furthermore, he never requested from the debtor a personal guarantee of the second mortgage to further protect his interest. Even assuming that Kovitz could prove that the representations complained of were made, the fact that plaintiff is an attorney with knowledge of

real estate law and business transactions dictates that as a matter of law any reliance by him on the debtor's alleged representations was unreasonable. Finally, it is abundantly clear to this Court that Kovitz relied on the security provided by the second mortgage and not solely on the alleged representations of the debtor.

The next issue to be addressed is whether the alleged representations proximately caused Kovitz' loss. To establish proximate causation, Kovitz must prove that, regardless of whether he was deceived into making the loan, it was the nonexistence of the alleged contract for the sale of the property that caused his $10,000 loss. *Weinstein, supra*, 31 B.R. at 811. As already noted, Kovitz relied almost entirely on the protection afforded by the second mortgage when making the loan, not the alleged contract. Kovitz' loss was caused by the foreclosure of the first mortgage and did not result from the debtor's inability to sell the property. Again, Kovitz never even requested to see a copy of the contract. Accordingly, the proximate cause of Kovitz' loss was his own failure to investigate the value of the property, the amount of the first mortgage, and to require Tesmetges to individually guarantee the repayment of the loan.

Finally, it is particularly important to point out that the alleged debt in the present case is due and owing, if at all, from the corporation and not from the individual debtor. This Court has not failed to note that the monies advanced by Kovitz in connection with the second mortgage were payable to the corporation, not the debtor. This fact is especially critical because § 523 applies only to individual debtors and their debts. Therefore, to prove the debt nondischargeable, plaintiff must first succeed in piercing the corporate veil which shields the individual debtor from debts incurred by the corporation. The necessity for piercing the corporate veil is evidenced by the fact that Tesmetges and his wife were acting at all times as principals of the corporation. Because the debt in question arises from acts of the corporation and not the individual debtor, plaintiff would ordinarily have to convince this Court to disregard the corporate fiction.

However, the Court need not reach that issue. Whether the loan was extended to the corporation or Tesmetges, as its alter ego, the facts clearly demonstrate that there were no false or fraudulent statements made by Tesmetges and/or his wife and relied upon by Kovitz. Assuming *arguendo* that the plaintiff could prove the debt was owed by the individual debtor, for the reasons stated above this Court concludes that the facts as alleged and evidence presented do not warrant a finding that the debt is not dischargeable.

CONCLUSION

In sum, the plaintiff has failed to present clear and convincing evidence showing that the alleged representations were made or that if made, he reasonably relied on such representations, or that such representations proximately caused his loss. Based on the foregoing facts and relevant law, the creditor has failed to make out a *prima facie* case under § 523(a)(2)(A) and the debt is deemed dischargeable.

SO ORDERED.