In re Joseph B. MICKEL, Debtor.

**BETHPAGE FEDERAL CREDIT UNION, Plaintiff,**

v.

**Joseph B. MICKEL, Defendant.**

**Bankruptcy No. 890–83613–20.
Adv. No. 891–8016–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

March 10, 1994.

Joseph Latona, Mullen and Iannarone, P.C., Smithtown, NY, for plaintiff.

Stan Y. Yang and Scott Y. Stuart, Office of the United States Trustee, Garden City, NY.

Allan B. Mendelsohn, Chapter 7 Trustee, Zavatsky & Mendelsohn, Syosset, NY.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court upon a motion for summary judgment ("Motion") by plaintiff, Bethpage Federal Credit Union ("Plaintiff"), determining that an alleged debt is owed by Joseph B. Mickel ("Debtor") and that the debt is non-dischargeable.

The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1) and 1334(a) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(B) and (I) of title 28.

For all the reasons set forth below, the Court holds that Plaintiff's Motion for summary judgment is **GRANTED IN PART.** Plaintiff is awarded judgment that Debtor owes and is responsible for a debt in the amount of $9,968.40 incurred through Debtor's use of a credit card issued by Plaintiff; Plaintiff has until April 8, 1994, to settle a proposed judgment upon Debtor setting forth this amount and, in addition, the inter-est, costs and attorneys' fees to which Plaintiff is entitled pursuant to the written agreement between Plaintiff and Debtor. Summary Judgment is **DENIED** as to the issues of fact with respect to that portion of Plaintiff's Motion in which it seeks judgment determining that the debt owed. it is non-dischargeable. The outstanding issues of fact could conceivably be proven by further pleadings, averting an unnecessary trial; accordingly, Plaintiff may move anew by filing and serving a motion on or before April 8, 1994, which motion shall be made returnable for oral argument before the Court on April 26, 1994. Should Plaintiff NOT move anew, both parties are **DIRECTED** to appear before the Court for a status hearing at 9:30 a.m. on April 17, 1994.

The dispute in this case concerns Debtor's alleged use of a credit card issued by Plaintiff, Debtor's claim that the card was stolen or lost, and the dischargeability of the debts arising from use of the card.

### RELEVANT FACTS

In February of 1990, Debtor applied for and received a $1,000 line of credit and an accompanying Visa credit card by Plaintiff. Debtor's wife was also given a credit card in April of 1990 with which to access this same line of credit.

As of June of the same year, the outstanding balance reflected upon Plaintiff's statement was $251. The balance upon the statement for the period ending July 16, 1990 was $1,013.52; for both months, Debtor tendered the minimum monthly payment of $10. Plaintiff's statement for the period ending August 15, 1990 indicated a balance owed of approximately $2,400, reflecting use of the credit line above its $1,000 limit. Approximately seventeen purchases appear upon this statement, all in Egypt.

On August 14, 1990, Plaintiff terminated Debtor's credit line due to use of the Visa card in excess of the authorized credit limit. Because Debtor was using the Visa card in Egypt, Plaintiff states that this termination did not take effect and the card remained operable for "some time". Affidavit of Frank A. Juzwiak, dated August 17, 1992, ¶ 11.

Debtor's card was then recovered by Bank of Credit and Commerce International on August 28, 1990; Debtor's wife surrendered her Visa card on October 10, 1990.

The statement for the period ending September 14, 1990 is six pages, enumerates approximately seventy purchases made in Egypt through August 28, 1990, and reports that the balance due was $8,909.54. Debtor tendered no payments in response to the statements for August through November.

By complaint dated September 14, 1990, Plaintiff instituted an action for collection of the debt arising from use of the Visa card in the District Court for the County of Nassau, State of New York ("State Court Action"). In Debtor's verified answer to the State Court Action, dated October 23, 1990 ("State Court Answer"), Debtor admits default in payments to Plaintiff, and does not deny or dispute the debt alleged to be owed, nor does Debtor speak of loss or theft of the Visa card. Debtor additionally asserted in his State Court Answer under penalty of perjury, presumably as an affirmative defense, that he had "filed for bankruptcy when unable to make [his] payments". Debtor's State Court Answer, dated October 23, 1990. It was *not*, in fact, until five weeks later that Debtor commenced a bankruptcy case on November 30, 1990, by the filing of a voluntary petition for relief under chapter 7 of title 11, United States Code ("Bankruptcy Code").

In connection with his November 30, 1992 bankruptcy petition, Debtor retained an attorney who provided financial counseling, reviewed suits pending against Debtor, and obtained the information required for preparation of the necessary bankruptcy schedules. Statement of David S. Zeidman, Esq., pursuant to Rule 10(f) of the Local Rules of the United States Bankruptcy Court for the Eastern District of New York for Practice Under the Bankruptcy Code; *see also* Transcript of Plaintiff's Deposition of Debtor, dated February 27, 1992, at 25–26.

On schedule A–3 of Debtor's bankruptcy petition, Debtor listed Plaintiff as a creditor holding an unsecured non-priority claim against Debtor in the amount of $9,300. Neither Debtor nor his attorney elected to designate Plaintiff's claim as being contingent, unliquidated or disputed. Debtor's petition also includes a statement of financial affairs in which he declares that he had suffered no losses from theft during the year immediately preceding the filing of his bankruptcy petition. The veracity and accuracy of the contents of the petition, the schedules and Debtor's statement of financial affairs were all affirmed to by Debtor, by signature made under penalty of perjury.

By complaint dated January 24, 1991, Plaintiff commenced the above-captioned adversary proceeding ("Adversary Proceeding") pursuant to which it seeks judgment determining that Debtor is obligated to satisfy Plaintiff for use of the credit line, and that this obligation is non-dischargeable.[1] In Debtor's answer to the Adversary Proceeding complaint ("Debtor's Answer"), he for the first time disputes activity contained upon the credit card statements; he writes: "... I could not have possibly incurred $9,968.40 worth of charges. I do not believe that most of the charges are mine." Debtor's Answer, dated February 12, 1991, at 2. Again, though, Debtor makes no mention of loss or theft of the Visa card.

On June 11, 1992, Plaintiff served Debtor with a request for admissions ("Admission Request"). Annexed to the Admission Request as exhibits are copies of approximately 60 merchant sales slips, purportedly signed by Debtor, specifying retail purchases made with the Visa card. Approximately five sales slip copies showed uses of Debtor's wife's Visa card, and which purported to contain her signature. Plaintiff sought in the Admission Request to have Debtor admit or deny the authenticity of all the signatures appearing on each of the charge slips. It was not until November 3, 1992 that Debtor responded to the Admission Request in two documents filed with the Court.

---

1. Pursuant to section 523(a) of the Bankruptcy Code, an individual debtor is not granted a discharge from debts incurred by, for example, "false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A) (1994). A complaint may be filed to have the bankruptcy court determine the dischargeability of any debt. Fed.R.Bankr.P. 4007(a) (1994).

One document response to the Admission Request, entitled "Opposition of Facts" will not be dealt with by the Court as it merely attacks Plaintiff's attorney and does not substantively address any of the issues at bar. *See* Debtor's Opposition of Facts in Response to Plaintiff's Admission Request, dated October 29, 1992.

Another document filed by Debtor is titled "Admission of Facts Answer and Motion" ("Discovery Response"). In Debtor's Discovery Response, he states that he reported the loss of his Visa credit card to Plaintiff's branch in Egypt, but does not state how or upon what date he did so. The Discovery Response marks the first instance in which Debtor makes reference to loss or theft of the Visa card. Debtor maintains that he lost the credit card on or about August 7, 1990 and does not know where the card was from then until it was recovered by Plaintiff (on August 28, 1990). Debtor's Admission of Facts in Response to Plaintiff's Admission Request, dated October 29, 1992, at 2–3.

Debtor did not insist (or even contend) that his signatures contained in the 60 photocopies of the merchant sales slips annexed to Plaintiff's Admission Request, were forged, nor did he dispute their authenticity in any way. Debtor only writes, "I respectfully request the Court not to admit to (sic) evidence the sales slips in question even though I did not answer in a timely fashion." *Id.* at 3.

On February 27, 1992, Debtor was deposed by Plaintiff. During this deposition, Debtor attempts to elaborate on his previous claim that the charges were not his. The pertinent portion of the deposition provides:

Q. While you were in Egypt, did you ever call [Plaintiff, other than to obtain an increase in your credit line,] again for any reason?

A. No.

Q. While you were in Egypt, did you ever write to [Plaintiff] about anything?

A. Not as far as I remember, no.

Q. While you were in Egypt, did you have your credit card?

A. Yes.

Q. When was that?

A. Around the first or second week in August. First or second. I don't remember exactly. I lost all my credit cards. I lost everything actually.

Q. Where was it that you lost your wallet?

A. I don't remember. What city or what places your are talking about?

Q. When did you first realize it was missing?

A. When I went home.

Q. From?

A. Outside. I don't remember. I have too many places. When I get back home I realize I don't have my wallet.

Q. What, if anything did you do to notify [Plaintiff] that your wallet or any of your other creditors that your wallet had been lost?

A. I call [Plaintiff] because at the bank they handle all Visa credit cards. I give a call to let them know about credit if anybody—I don't give approval—that I lost my wallet and I remember two or three weeks later there was like a week in August—I remember before I came here—they told me back—actually sent somebody home—they told me we find your credit card and we mailed them to you in the United States because we tried to get in touch with you. We couldn't get so we mailed to the United States.

Transcript of Plaintiff's Deposition of Debtor, dated February 27, 1992, at 20–21.

As to whether Debtor's bankruptcy counsel (who aided in the preparation of Debtor's petition) knew of Debtor's dispute of the balance Plaintiff alleged to be owed for use of the credit line, Debtor stated that the attorney was informed of the dispute:

Q. Did there come a time when you retained an attorney to file a bankruptcy petition for you?

A. Yes.

Q. Was that attorney David Zeidman?

A. Last name.

Q. I show you a certain document and ask if this is a copy of the bankruptcy petition?

A. ... Yes.

Q. ... Did you tell Mr. Zeidman that you didn't owe [Plaintiff] what [Plaintiff] said you owed them?

A. Yes.

*Id.* at 25–6.

Having set forth in detail the relevant facts, we now address whether the Motion should be granted and Plaintiff awarded summary judgment determining that a debt of $9,968.40 is owed and is non-dischargeable.

## LEGAL DISCUSSION

The Court's analysis must begin with section 523(a) of the Bankruptcy Code which enumerates certain debts which are excepted from an individual's discharge, 11 U.S.C. § 523(a) (1994); in relevant part, the section provides:

A discharge ... does not discharge an individual debtor from any debt—

.        .        .        .        .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

.        .        .        .        .

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

*Id.* § 523(a)(2)(A) (1994) [2].

Because this is a motion for summary judgment, we examine whether there exists any genuine issue of material fact. The Court's mission will be "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." Fed.R.Civ.P. 56 advisory committee's note (1963).

In the case at bar, two issues will determine the outcome: First, whether Debtor in fact incurred and is liable for the debt arising from use of the Visa credit cards; second, whether the debt, if indeed owed, is non-dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. We first address the former issue.

## A. Debtor's Liability for the Credit Card Debt

■ As stated earlier, Debtor *first* claimed that he was not responsible for the purchases made with the credit card in his Answer to Plaintiff's Adversary Proceeding complaint. But previously, in his State Court Verified Answer, Debtor admitted rather than disputed the amount due. No mention of loss or theft was made. Then, in his bankruptcy petition, Debtor neither mentioned nor alluded that he was not responsible for the charges, or that the credit card issued by the Plaintiff had been stolen or lost. Consequently, when Debtor first alleges in the Adversary Answer that the Visa card had been stolen, he is contradicting two documents, both of which were sworn to: his State Court Answer and his bankruptcy petition. The former contains no mention of theft, and the latter affirmatively states that Debtor had suffered no theft within one year pre-petition.

Furthermore, as stated, Debtor's petition lists Plaintiff as an account creditor for $9,300 and the claim is not denoted as disputed, unliquidated or contingent. The veracity and accuracy of these schedules, which were prepared with the aid of bankruptcy counsel, were also affirmed by Debtor's signature.

Finally, Plaintiff has supplied the Court with over 60 copies of merchant sales receipts which purport to contain Debtor's signature. Debtor did not, in any pleading or in any manner, dispute these signatures or their genuineness, or allege that it was not he who signed each receipt and used the

---

2. In its Adversary Proceeding complaint and Motion papers, Plaintiff states that Debtor's credit card debt is non-dischargeable because it was "obtained by false pretenses or actual fraud", quoting the language contained in section 523(a)(2)(A), but citing section 523(a)(2)(B). *See* 11 U.S.C. § 523(a)(2) (1994). The Court will adjudicate the Motion and Adversary Proceeding as one having been brought under section 523(a)(2)(A) of the Bankruptcy Code in spite of the incorrect citation to subsection (B) of that section. Fed.R.Civ.P. 8(f) (1994) (pleadings should be "construed so as to do substantial justice"). Plaintiff's use of the correct language establishes that citation to a different subsection was a mere misstatement, without prejudice to Debtor.

credit card. This is critical: If the authenticity of Debtor's signatures is not in question, then authenticity may not be a subject for trial.

From this background, Debtor seeks to deny liability for the credit card charges. Debtor belatedly made the claim that the charges were not his without any substantiation and without any documentary evidence or proof that the card had been stolen or lost (or that he had *reported* the card stolen).

■ It is clear that in response to Plaintiff's summary judgment Motion, Debtor has the burden of coming forward and demonstrating that there are material issues of fact to be determined by trial. *Meehan v. Amax Oil & Gas, Inc.*, 796 F.Supp. 461 (D.Colo. 1992). *See Allstate Ins. Co., v. Carmer*, 794 F.Supp. 871, 872 (S.D.Ind.1991) ("[w]hile facts are viewed in light most favorable to nonmoving party, there is an affirmative burden of production on nonmoving party to defeat proper summary judgment motion".) To prevail, Debtor must introduce some evidence to support the claimed factual dispute which would require a trial. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). *See also Winkel v. Reserve Officer of City of Beloit, Kan.*, 773 F.Supp. 1487, 1489 (D.Kan.1991) ("[A g]enuine issue of material fact precluding summary judgment exists if evidence is such that reasonable jury would return verdict for nonmoving party; mere scintilla of evidence in favor of nonmoving party is insufficient to create genuine issue of material issue of fact. . . .").

Returning to the instant case, there exists no evidence serving to create any genuine issue of material fact on the issue of liability for the credit card debt. Debtor's belated and suspect claim that his Visa card had been lost or stolen is devoid of any evidence *whatsoever* and furthermore is inconsistent with his prior sworn statements. Indeed, Debtor never put the authenticity of his own signature in issue. The mere allegations by Debtor that the charges were not his will not suffice to defeat Plaintiff's Motion. In light of all of the foregoing, and consistent with the applicable law and the standard with which we adjudicate a summary judgment motion, the Court holds that the signatures upon the sales receipts detailing the uses of Debtor's Visa credit card are genuine and authentic and that Debtor is liable for all charges thereon.

## B. Dischargeability of the Debt

The second issue is whether summary judgment determining that the debt is non-dischargeable is appropriate. *See* 11 U.S.C. § 523(a) (1994). The sole argument in Plaintiff's Motion papers in support of its contention that the debt is non-dischargeable, provides:

> [B]y making purchases far in excess of the credit limit, the said credit was obtained by false pretenses or actual fraud. . . . Clearly, there was no reasonable expectation of repayment and the question is open as to whether there was even a reasonable expectation that [Debtor] would be returning to the United States.

Affirmation of Joseph Latona in Support of Motion for Summary Judgment, dated August 20, 1992, at 2; *see* 11 U.S.C. § 523(a)(2)(A) (1994).

■ This single argument by Plaintiff cannot serve to satisfy the five elements that all plaintiffs must establish in order for a court to grant judgment determining that a debt is non-dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. *Kovitz v. Tesmetges (In re Tesmetges)*, 74 B.R. 911, 914 (Bankr.E.D.N.Y.1987), *aff'd*, 86 B.R. 21 (E.D.N.Y.1988), *aff'd*, 862 F.2d 304 (2d Cir. 1988); *Kotan v. Austin (In re Austin)*, 132 B.R. 1, 3 (Bankr.E.D.N.Y.1991). The five elements are: (1) The debtor must make an express or implied false representation; (2) The representation must be made with knowledge that it was false at the time it was made; (3) The false representation must be made with the intent to deceive; (4) The creditor must have reasonably relied upon the debtor's misrepresentation(s); and finally, (5) The creditor must establish that it was damaged. *Kovitz* 74 B.R. at 914; *Kotan* 132 B.R. at 3. The standard is by a preponderance of the evidence. *Grogan v. Garner*, 498

**462**

U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Citibank v. Wiener (In re Wiener)*, 144 B.R. 17, 20 (Bankr.E.D.N.Y.1992); *First Dep. Nat'l Bank v. Pursley (In re Pursley)*, 158 B.R. 664, 667 (Bankr.N.D.Ohio 1993).

 Plaintiff plainly has the burden of showing that there is no genuine material issue of fact as to these elements and that it is entitled to judgment as a matter of law. *Jackson v. Radcliffe*, 795 F.Supp. 197, 203 (S.D.Tex.1992). While the issue of Debtor's liability for the credit card purchases may be summarily resolved against Debtor based upon all documents before the Court, whether the liability is non-dischargeable for having been incurred through false pretenses or actual fraud cannot be.

Plaintiff has not adduced any evidence that an implied false statement was made or that the credit card debts were incurred with fraudulent pretenses. Whether Debtor had the financial ability to satisfy his debt at the time it was incurred was not discussed by Plaintiff. No proof of intent, reliance or damages was offered. Plaintiff only asserted that there must have been fraud because Debtor exceeded his authorized credit limit by nearly ten times. Summary judgment, consequently, is properly denied: The moving party has failed to establish the lack of material issues of fact. *Snowden by and Through Victor v. Connaught Laboratories, Inc.*, 793 F.Supp. 1040, 1042 (D.Kan.1992).

For all of the foregoing reasons, the Court holds (1) that Debtor is liable for the obligations stemming from the use of the Visa credit card; and (2) Plaintiff has neither alleged nor demonstrated the required elements of its claim that this debt is non-dischargeable and therefore summary judgment on the issue must be **DENIED.** Plaintiff may settle a judgment for $9,968.40, and add the interest, costs and attorney's fees to which it is entitled pursuant to Plaintiff's and Debtor's agreement (the appropriate portions to be annexed to the proposed judgment) by serving and filing same so as to be actually received on or before April 8, 1994.

Though denial of summary judgment ordinarily indicates that a trial is required, in this case the outstanding issues might be resolved and the elements of Plaintiff's claim proved by further pleadings (accompanied by the proper documentary evidence), eliminating the need for a trial. Proceeding this way may conserve resources. Accordingly, Plaintiff is given leave to move anew for summary judgment, should it deem the requisite elements are provable by pleading in lieu of trial. The motion shall be filed and actually served on or before April 8, 1994. Plaintiff shall file the new motion such that it is returnable for hearing before the Court at 9:30 a.m. on April 26, 1994. Should Plaintiff NOT move anew, both parties are **DIRECTED** to appear before the Court for a status hearing at 9:30 a.m. on April 17, 1994.

**SO ORDERED.**