**In re Edward McGRATH and Idwella McGRATH, Debtors.**

**Michael M. McGRATH, Plaintiff,**

v.

**Edward McGRATH and Idwella McGrath, Defendants.**

**Bankruptcy No. 892–86068–478. Adv. No. 893–8064–478.**

United States Bankruptcy Court, E.D. New York.

May 6, 1994.

James A. Gallagher, Baldwin, NY, for debtors/defendants.

Peter T. Connor, Mineola, NY, for plaintiff.

### DECISION ON DISCHARGEABILITY OF DEBT

DOROTHY EISENBERG, Bankruptcy Judge.

This is an adversary proceeding brought by Michael McGrath, a judgment creditor in the amount of $44,966.36, seeking a determination by this Court that the judgment debt be deemed non-dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code. The Debtors are the Plaintiff's mother and father. Based upon the testimony and evidence presented, the Plaintiff has not sustained the burden required, and the debt will be discharged.

### FINDINGS OF FACT

Edward and Idwella McGrath (hereinafter the "Debtors" or "Defendants") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on October 30, 1992. Plaintiff, Michael McGrath (hereinafter "Plaintiff") is their son. On August 15, 1988, the parties entered into an oral agreement relating to the sale by the Debtors of the Plaza Bar, Ltd. (hereinafter the "Bar") to the Plaintiff. The terms of the sale were as follows. The Defendants agreed that the Plaintiff was to immediately apply for New York State Liquor Authority ("SLA") approval and upon receipt of the SLA approval, the Debtors would transfer one-third (⅓) of the shares of the Bar to the Plaintiff. With respect to SLA approval, the Plaintiff was to submit an application to the SLA for authorization to be added as a one-third (⅓) shareholder of the Bar. The Debtors agreed to provide whatever information or signatures were required. Due to the nature of the business, transfer of such corporate interest was necessarily conditioned upon the SLA's approval of the Plaintiff.

The remaining two-thirds (⅔) of the shares would be transferred upon completion of the Plaintiff's obligations under the agreement. In consideration of the total purchase price of $50,000, the Plaintiff agreed to pay an

initial deposit of $10,000 (but actually paid only $2,500), and to keep all bills current. The balance of $47,500 was to be paid by paying off the notes remaining from the Debtors' original purchase of the Bar. Pursuant to assumption of these notes, the Plaintiff was obligated to make eighteen (18) monthly payments of $685.03, which would be applied to the $47,500 balance on the purchase of the Bar. (The Debtors had previously made forty-two (42) monthly payments of $685.03). In addition, the Plaintiff was to pay $150 per week to the Debtors until all of the payments made totalled $50,000. The Debtors were the signatories on the corporate account. The Plaintiff was responsible for depositing the Bar's receipts into the corporate bank account and providing the bills to the Debtors. Upon the information and bills provided by the Plaintiff, the Defendants would pay the Bar's expenses.

The Plaintiff commenced operating the Bar as manager, and virtually had total control of its operations. The Plaintiff's father came to the Bar occasionally to observe. The Plaintiff's mother did not, but she kept the books and records and paid the bills as provided to her by the Plaintiff.

During the period of August, 1988 to December, 1989, the Plaintiff made all but one remaining note payment of $685.03 from bar receipts. Throughout this same period, the Plaintiff had made forty-seven (47) payments of $150 to the Defendants, and had purchased some equipment for the Bar. However, by December 18, 1989, the Plaintiff was seventeen (17) weeks behind in his $150 weekly payments.

From the commencement of the agreement in August of 1988, the Plaintiff was successful in the management of the Bar. However, problems developed in August or September of 1989 regarding the Plaintiff's performance. The landlord had complained to the Debtors that from September or October, 1989, the condition of the Bar had deteriorated and the Plaintiff had allowed the insurance on the premises to lapse. The Defendants became aware that there were at least $1,700 in unpaid bills and the Plaintiff's failure to timely deposit receipts in the bank and his delay in providing the bills to his mother resulted in untimely payments to several of the Bar's significant creditors. The

Plaintiff had clearly caused a delay and/or default in payments to some creditors.

The testimony presented to this Court by the Plaintiff's brother revealed that the Plaintiff, while operating the bar, engaged in illegal gambling at the premises. The Defendants' son Edward, the Plaintiff's brother, testified that he observed the Plaintiff taking money from bar patrons on approximately twelve (12) occasions and making calls to his bookie for the purpose of placing bets on various sporting events. Edward further testified that the Plaintiff acknowledged to him that bar receipts were being used to pay off the Plaintiff's gambling debts and that he had delayed paying beer and liquor company obligations of the Bar because of his gambling activities. The Defendant, Edward McGrath, was notified of his son's non-payment of bar bills and gambling activities in or about November, 1989 and subsequently attempted to make arrangements to discuss the matter with the Plaintiff. The Defendants' son, Edward, testified that his father tried to discuss the matter with the Plaintiff on several occasions without success.

On December 18, 1989, the Defendant, Edward McGrath, went to the Bar and in an emotional rage, removed his son from the premises and refused to permit him to return. The Debtors claim that they took possession and control of the premises for several reasons, including the Plaintiff's gambling activities, his failure to apply to the SLA, and his non-payment of bar debts.

The Debtors managed the Bar after removing the Plaintiff. They tried to rebuild the Bar business, but it failed and the Bar subsequently closed without any benefit to the Debtors.

The Plaintiff sued the Debtors in State Court and was successful in obtaining a judgment against them based on money advanced by the Plaintiff to the Defendants for payment of Bar expenses and for money paid to the Bar's creditors directly. There was no finding of fraud in that Court's decision.

The Plaintiff presented no evidence at trial to show that he attempted to submit an application to the SLA, which was a prerequisite to becoming a corporate shareholder in

the Bar. Specifically, the Plaintiff was required to submit an application which included his fingerprints, financial data and a personal questionnaire, all of which the Plaintiff failed to pursue. The Plaintiff claims that the Debtors maintained all of the necessary books and records and that he had requested the corporate kit from the Debtors, but never received the kit. However, the facts are clear that he never retained an attorney or did anything to commence an application to the SLA.

Unfortunately, this is a family dispute. It is clear that the parties lacked the communication skills which could have avoided this unfortunate family disruption, which resulted not only in financial losses to both, but created a deep schism between parent, child and sibling.

### DISCUSSION

Section 523(a)(2)(A) states, in relevant part:

> (a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. Sec. 523(a)(2)(A) (1992).

■ The burden of proving that a debt comes within one of the statutory exceptions to dischargeability is upon the party opposing discharge of the debt. *In re Balzano,* 127 B.R. 524, 529 (Bankr.E.D.N.Y.1991). "Exceptions to discharge should be strictly construed in favor of the debtor and against the creditor." *Id.*

■ To prevail on a claim for non-dischargeability under Section 523(a)(2)(A), a creditor must prove each of the following elements:

(1) The debtor made the representation;

(2) That at the time the representation was made the debtor knew the representation was false;

(3) The debtor made the representation with the intention and purpose of deceiving the creditor;

(4) The creditor reasonably relied on the representation; and

(5) The creditor sustained a loss or damage as the proximate consequence of the representation having been made. *Id.* at 530.

■ The standard of proof for Section 523 dischargeability exceptions is the preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). This provision has been consistently held to require proof that a debtor be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong; implied fraud, or fraud in law without the imputation of bad faith or immorality is just not enough. *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986); *Gabellini v. Rega,* 724 F.2d 579, 580–581 (7th Cir.1984); *Kovitz v. Testmetges (In re Testmetges),* 74 B.R. 911, 914 (Bankr.E.D.N.Y. 1987), *aff'd* 86 B.R. 21 (E.D.N.Y.1988), *aff'd* 862 F.2d 304 (2d Cir.1988).

■ It is insufficient under Section 523(a)(2)(A) simply to show that the debtor left unfulfilled a prior oral representation or promise. "Were this showing sufficient, virtually every oral obligation would give rise to a non-dischargeable debt under Section 523(a)(2)(A)." *In re Balzano,* 127 B.R. at 531.

■ Specifically, a fraudulent promise under Section 523(a)(2)(A) requires proof that at the time the debtor made it, he or she did not intend to perform as required. *In re Schwartz,* 45 B.R. 354, 357 (D.C.1985) (where any inference of fraud was negated since debtor paid approximately nine installments to creditor); *In re Gans,* 75 B.R. 474, 486 (Bankr.S.D.N.Y.1987).

■ In the instant case, the Plaintiff established that the Defendants made a representation about selling the Bar to the Plaintiff. The Plaintiff, however, did not produce any evidence that the Defendants had knowledge of the representation's falsity, nor was there any evidence that Defendants had any

intent to deceive or defraud their son. Specifically, there was a lack of any evidence tending to show that at the time the parties entered into the agreement the Defendants did not intend to transfer ownership of any of the shares, together with full ownership of the Bar upon full compliance with their oral agreement. On the contrary, it appears from the credible testimony of the Defendants that they intended to transfer one-third of the shares immediately and the remaining two-thirds (⅔) once the Plaintiff fulfilled all of his obligations. The reason why the Defendants did not transfer one-third of the shares immediately, as agreed, was due to the Plaintiff's own failure to submit an application to the New York State Liquor Authority, which was a lawfully necessary condition precedent to the transfer. The Defendants were not permitted, under law, to transfer the shares to the Plaintiff without first obtaining approval by the SLA. *Forgan v. McKenzie*, 12 Misc.2d 508, 175 N.Y.S.2d 322, 327 (S.Ct. Onondaga County, 1958); *McKinney's Alcohol Beverage Control Law*, § 99–d.2.

Section 99–d.2 provides as follows:

2. Before any corporate change in stockholders, stockholdings, officers or directors can be effectuated for the purposes of this chapter, there shall be filed with the liquor authority an application for permission to make such corporate change ...

The record reveals that the Defendants did not make any representations with the intention and purpose of deceiving the Plaintiff. It is evident that from the outset the Defendants fully intended to comply with their part of the agreement. The Defendants' removal of the Plaintiff as bar manager and failure to transfer the Bar to the Plaintiff was attributable to reasons lacking any fraudulent intent. Once the Debtors learned of the Plaintiff's illegal gambling activities taking place at the Bar, which conduct could have resulted in the loss of the Defendants' liquor license and jeopardize their entire business, it was not unreasonable for them to stop such activity, and default on their oral agreement. Additionally, the deterioration of the physical condition of the Bar and the Plaintiff's delay in paying Bar creditors exacerbated the Defendant's need to remove the Plaintiff from the Bar and preserve what little assets remained.

Having failed to prove the second and third elements of Section 523(a)(2)(A), there is no need to examine the fourth and fifth prongs of the test.

## CONCLUSION

This Court has subject matter jurisdiction of this matter predicated on 28 U.S.C. § 157(a) and 1334(b) and the standing order of referral of cases to bankruptcy judges.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

This memorandum decision constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(c), as made applicable herein by F.R.Bankr.P. 7052.

Based on the findings of fact and conclusions of law above, this Court finds that the Plaintiff has not met his burden of proof as to the non-dischargeability of the debt pursuant to Section 523(a)(2)(A). Therefore, this adversary proceeding is dismissed.

Settle an order in accordance with this memorandum decision.